[844 NE2d 766, 811 NYS2d 312]

In the Matter of ALAN J. BRISSON, Respondent, v COUNTY OF
ONONDAGA, Appellant, et al., Respondent. WORKERS' COM-
PENSATION BOARD, Respondent.

Argued January 5, 2006; decided February 16, 2006

**POINTS OF COUNSEL**

*Wolff, Goodrich & Goldman, LLP,* Syracuse (*George R. Wolff* of counsel), for appellant. I. When the claimant, Alan Brisson, settled his third-party action, Onondaga County had no existing workers' compensation lien. (*Layman v County of Rockland,* 162 AD2d 814; *Vinson v Berkowitz,* 83 AD2d 531; *Matter of Fellner v Country Wide Ins.,* 95 AD2d 106.) II. There is no rule, based upon statute or decisional law, requiring a workers' compensation insurer or self-insured employer to reserve its offset rights, when consenting to the settlement of a claimant's third-party settlement, if there is no waiver or compromise of an existing workers' compensation lien. (*Matter of Hilton v Truss Sys.,* 82 AD2d 711, 56 NY2d 877; *Matter of Robinette v Meyer Sign Co.,* 43 AD2d 458; *Matter of Millward v Meyer Sign Co.,* 28 AD2d 1027, 23 NY2d 966; *Matter of Angrisano v United Progress,* 114 AD2d 536, 67 NY2d 607.) III. The County of Onondaga, in granting consent to the settlement of the third-party action, implicitly reserved its offset rights by requesting the amount of the net proceeds passing to the claimant. IV. The Workers' Compensation Board and the Appellate Division, in the case at bar, failed to follow their own precedent. (*Matter of Whitcomb v Xerox Corp.,* 246 AD2d 947; *Matter of Parmelee v International Paper Co.,* 157 AD2d 878; *Matter of Miller v Arrow Carriers Corp.,* 130 AD2d 279; *Matter of Hilton v Truss Sys.,* 82 AD2d 711, 56 NY2d 877.) V. Failure of the Workers' Compensation Board and the Appellate Division to follow or distinguish their own precedent causes uncertainty and creates unnecessary litigation in workers' compensation claims. (*Matter of Charles A. Field Delivery Serv. [Roberts],* 66 NY2d 516; *Matter of Martin [Troy Publ. Co.—Roberts],* 70 NY2d 679.)

*Eliot Spitzer, Attorney General,* Albany (*Jennifer Grace Miller, Caitlin J. Halligan* and *Daniel Smirlock* of counsel), for Workers' Compensation Board, respondent. A self-insured employer or workers' compensation carrier must unambiguously preserve its offset rights at the time of settlement, even in the absence of

an existing lien. (*Matter of Whitcomb v Xerox Corp.*, 246 AD2d 947; *Matter of Angrisano v United Progress*, 114 AD2d 536, 67 NY2d 607; *Matter of Hilton v Truss Sys.*, 82 AD2d 711, 56 NY2d 877; *Matter of Robinette v Meyer Sign Co.*, 43 AD2d 458; *Matter of Johnson v Buffalo & Erie County Private Indus. Council*, 84 NY2d 13; *Singh v Ross*, 12 AD3d 498; *Matter of Parmelee v International Paper Co.*, 157 AD2d 878.)

## OPINION OF THE COURT

READ, J.

We hold that a self-insured employer or workers' compensation carrier must preserve its right to any offset expressly and unambiguously when consenting to settlement of a third-party action, regardless of whether there is an existing lien against the claimant's recovery. We further conclude that substantial evidence supports the Workers' Compensation Board's finding that the self-insured employer in this case did not do so.

### I.

On November 4, 1998, claimant Alan J. Brisson, who worked in Onondaga County's Department of Transportation, was injured when struck from behind by a van while he was picking up a "Men Working" sign from the shoulder of a road. Claimant sought workers' compensation benefits and, in July 2000, a Workers' Compensation Law Judge (WCLJ) issued a decision concluding that he had suffered a compensable injury to his lower back, and made awards for his periods of disability.

Claimant also filed a third-party action against the driver and owner of the van. When asked by claimant's attorney to consent to settlement of this third-party action for $50,000, RMSCO, Inc., the third-party administrator for claimant's self-insured employer, Onondaga County, responded on August 17, 2001 as follows: "On behalf of [the County], consent is given to the third party settlement of $50,000.00. We are assuming that this is the policy limit. We need to know the net third party proceeds." Claimant's attorney on August 20, 2001 wrote RMSCO that

> "I am in receipt of your letter granting this firm consent to settle [claimant's] third party claim. It is our understanding that, based on the dollar amount of [claimant's] third party settlement, you have no lien as well as no right to a [payment] holiday. If

you have a different understanding, please contact this office within five business days or we will proceed with this third party settlement based on our understanding."

In an undated letter, RMSCO replied that

"[t]his letter is in response to yours of 08/20/2001.

"You indicate that you believed we have no right to a [payment] holiday. This is not entirely correct. Once lost wages and medical exceed basic economic loss, then we can take credit against net third party proceeds. For example, once lost wages are paid on or after 11/04/2001, we can take credit against net third party proceeds."

The third-party action was, in fact, settled for $50,000 on September 24, 2001. After payment of taxable costs, disbursements and attorneys' fees, claimant netted $32,958.73.

On October 5, 2001, RMSCO sent claimant a "Notice that Payment of Compensation has been Stopped or Modified." The notice stated that claimant's benefits would cease on the three-year anniversary of the accident, November 4, 2001, and would not resume for 168.2 weeks, or until January 24, 2005, so as to offset net settlement proceeds.

Claimant protested the suspension of his benefit payments at a hearing before a WCLJ on January 24, 2002. Another WCLJ concluded in a decision issued on July 10, 2002 that the County was, in fact, not entitled to offset claimant's future workers' compensation payments. While the County had indisputably consented to the settlement, "[t]here was no specific reservation [of the County's] right to claim credit [for the settlement]." The WCLJ relied upon *Matter of Hilton v Truss Sys.* (82 AD2d 711 [3d Dept 1981], *affd for reasons stated below* 56 NY2d 877 [1982]) for the proposition that "an employer must unambiguously preserve its offset rights against future benefits, or such rights will be deemed waived."

On August 9, 2002, the County asked the Board to review the WCLJ's decision, disputing the WCLJ's reading of *Hilton* and arguing that "[b]ecause, in consenting to the settlement . . . , the self-insured employer neither waived nor compromised a workers' compensation lien, there was no requirement that the self-insured employer expressly reserve its offset rights." Alternatively, the County contended that the correspondence between RMSCO and claimant's attorney, in fact, reserved its offset rights.

In its decision issued on November 18, 2002, the Board rejected the County's arguments, and agreed with the WCLJ that a self-insured employer must "unambiguously preserve its offset rights" when consenting to settlement "or such rights will be deemed waived." The Board further concurred with the WCLJ that

> "the self-insured employer failed to unambiguously reserve its rights to an off set [*sic*] against future awards when it consented to the third party settlement. To preserve its rights in this case, the self insured employer's first correspondence on this issue should have contained a clear statement of its reservation of this right or the second correspondence should have withdrawn the consent, issued in the first, pending the resolution of the issue raised in the claimant's attorney's correspondence."

Accordingly, the County was "not entitled to any offset of workers' compensation benefits against the third party settlement paid to the claimant."

Upon the County's appeal, the Appellate Division affirmed, turning down the County's argument that *Hilton* mandates only that carriers with existing liens must preserve the right to offset future benefit payments plainly and unambiguously. The Appellate Division also observed that "whether the employer adequately preserved its right to a future offset in a particular case is a factual issue for the Board, and [its] decision will be upheld if supported by substantial evidence," which the Court found in this case (12 AD3d 976, 977-978 [3d Dept 2004]). We granted the County permission to appeal, and now affirm.

## II.

Under Workers' Compensation Law § 29 (1), a claimant may pursue a legal action against a third party for damages arising out of the accident underlying the workers' compensation claim, but the self-insured employer or carrier has a lien on any recovery to the extent of compensation and medical expenses already disbursed. Workers' Compensation Law § 29 (4) gives the employer or carrier a corollary right to offset a claimant's future compensation benefits with the proceeds of any recovery. Subdivision (1-a) of section 29, however, precludes a lien under Workers' Compensation Law § 29 (1) for benefits paid in lieu of first-party benefits which another insurer would have otherwise been obligated to pay under New York's No-Fault Law, and cor-

respondingly limits the credit or offset provision in Workers' Compensation Law § 29 (4) (*see Matter of Fellner v Country Wide Ins.*, 95 AD2d 106 [3d Dept 1983]). The term "[f]irst party benefits" refers to "basic economic loss," or up to $50,000 per person consisting of certain medical and other reasonable and necessary expenses as well as lost earnings for three years from the date of the accident (Insurance Law § 5102 [a], [b]; *see Matter of Johnson v Buffalo & Erie County Private Indus. Council*, 84 NY2d 13 [1994]). Finally, a claimant who compromises a third-party action for an amount less than the compensation benefits paid or payable under the Workers' Compensation Law must first obtain the written consent of the entity liable to pay the benefits, or an order on notice from the court within three months of its approval of the settlement (Workers' Compensation Law § 29 [5]).

Here, claimant's third-party action settled a little over one month before the three-year anniversary of the automobile accident in which he suffered his compensable injury. By operation of Workers' Compensation Law § 29 (1-a), therefore, there was no existing lien under Workers' Compensation Law § 29 (1) and the County could not yet enforce a payment holiday under Workers' Compensation Law § 29 (4) because the benefits paid to claimant up to the point of settlement were all in lieu of first-party benefits. According to the County, the absence of an existing lien that might have been compromised or waived takes this case entirely outside *Hilton*, thereby relieving it of any obligation to reserve future offset rights explicitly when it consented to the settlement pursuant to Workers' Compensation Law § 29 (5).

In *Hilton*, a worker injured his spine when he fell from a train and was rendered paraplegic. As part of settlement negotiations in a third-party action, the workers' compensation carrier agreed to waive its then existing lien of approximately $70,000. At issue was whether or not the carrier had waived not only the lien, but also its right to offset the net proceeds of claimant's third-party recovery against his future compensation benefits. The Appellate Division held that if a carrier or employer desires to preserve its offset rights when consenting to a settlement, "it is obliged to plainly and unambiguously so state. Doing so has the salutary effect of affording a claimant the opportunity to examine a proposed settlement from a proper perspective, for it enables him to weigh this offer against a potential loss of future compensation benefits" (*Hilton*, 82 AD2d at 712 [citation omitted]). We affirmed for these reasons.

In the County's reading, however, *Hilton* hinges entirely on the existence of a lien because a carrier cannot dispel the inference that its waiver induced settlement absent an explicit reservation of future offset rights. The Board and the Appellate Division did not read *Hilton* so narrowly, and neither do we.

As the Appellate Division noted, claimants are unable to assess the ramifications of a settlement unless they know the status of the employer's or carrier's claims against settlement proceeds. Moreover, regardless of lien status "a carrier or self-insured employer and claimant are deemed to be involved in . . . settlement negotiations, [and] ambiguities [will] be resolved against the carrier" (*Brisson*, 12 AD3d at 977 [citation and internal quotation marks omitted]). Further, Workers' Compensation Law § 29 (5) does not distinguish between those instances where an employer or carrier has both an existing lien and prospective offset rights at the time of settlement and those cases, such as this one, where the employer or carrier possesses only the latter. In either circumstance, failure to secure the employer's or carrier's consent results in forfeiture of the claimant's future compensation benefits (*see Johnson*, 84 NY2d at 19). Correspondingly, unless an employer or carrier unambiguously and expressly reserves a lien or the right to offset when giving consent, the lien or offset is waived.

Finally, whether an employer adequately preserved its right to a future offset is a factual issue for the Board (*Matter of Whitcomb v Xerox Corp.*, 246 AD2d 947 [3d Dept 1998]). A finding of fact made by the Board "is considered conclusive on the courts if supported by substantial evidence" (*Matter of Gates v McBride Transp.*, 60 NY2d 670, 671 [1983] [citation omitted]). Where such evidence exists, the Board's decision may not be disturbed (*Matter of Pfeffer v Parkside Caterers*, 42 NY2d 59, 60 [1977]).

In this case, claimant's attorney informed the County that he did not believe that the County had either a lien or a right to a payment holiday. In response, the County merely stated that claimant's attorney was "not entirely correct": the County did not withdraw its consent to the settlement; the County did not explicitly reserve its right to an offset as required by *Hilton*. Thus, substantial evidence supports the Board's factual determination.

Accordingly, the order of the Appellate Division should be affirmed, with costs.

R.S. SMITH, J. (dissenting). I join, with some misgivings, in the Court's main holding, that a compensation carrier or employer that consents to settlement of a third-party claim must expressly reserve its offset rights or lose them, even where it has no existing lien. I have misgivings because it is not completely clear to me where this requirement is to be found in the statute. I join nevertheless, because the Court establishes a clear, easy-to-follow rule in an area where clarity is much to be desired; workers' compensation claimants who settle third-party claims should never be left in doubt about how much of the settlement will go to them and how much to the compensation carrier.

But I cannot join the majority's application of the rule to this case. Surely the employer's reservation of its offset rights here was clear as day. The words "we can take credit against net third party proceeds" are as unambiguous a statement as can be imagined that the employer retained its offset right, and the employer's letter to claimant's counsel said those words twice.

Chief Judge KAYE and Judges G.B. SMITH, CIPARICK, ROSEN-BLATT and GRAFFEO concur with Judge READ; Judge R.S. SMITH dissents and votes to reverse in a separate opinion.

Order affirmed, with costs.