WILSON, J.:
*1227 **248 When an injured worker obtains a recovery from a third-party tortfeasor, both the worker and the employer's insurance carrier may benefit. Section 29 of the Workers' Compensation Law was enacted to ensure that insurance carriers pay their ***567 equitable share of litigation expenses incurred by injured workers who obtain such recoveries. Here, the wooden application of our precedents to circumstances not contemplated therein has created a rule incompatible with that legislation. Equitable apportionment should not turn solely on the label given to a claimant's award, whether that label is "schedule loss of use" or otherwise, but must take into account the certainty of the award at the time a third-party matter is resolved.
Joseph Terranova, a foreman employed by the Lehr Construction Company, injured his right knee on a raised floor tile at a job site. He sought both workers' compensation benefits from Lehr's carrier, the New Hampshire Insurance Company (NHIC), and damages from the third-party contractor responsible for the defective tile. At the time of Mr. Terranova's settlement with the third party-to which NHIC consented in a letter-he had received $21,495.99 in workers' compensation payments and was litigating the extent of his schedule loss of use before a workers' compensation law judge. Proceedings before that judge continued after the third-party settlement and ultimately resulted in a finding that Mr. Terranova suffered a ten percent schedule loss of use of the right leg that entitled him to 28.8 weeks of benefits, or an additional $9,960. Despite Mr. Terranova's arguments to the contrary, the judge-as well as the Board and the Appellate Division-concluded that because his ultimate award was of a type we had indicated had an ascertainable present value, he was not entitled to the post-settlement apportionment of the litigation expenses contemplated for other types of awards in Burns v. Varriale ( 9 NY3d 207, 849 N.Y.S.2d 1, 879 N.E.2d 140 [2007] ).
As we have previously explained,
" Section 29 of the Workers' Compensation Law governs the rights and obligations of employees, their dependents, and compensation carriers with respect to actions arising out of injuries caused by third-party tort-feasors. A claimant has the first right to bring a third-party action, and, while undertaking such an action, may continue to receive compensation benefits ( Workers' Compensation Law, § 29, subd 1 ). In the event that a claimant recovers in a third-party action, the compensation carrier is granted a lien on the amount of the recovery proceeds equal to the amount of past compensation it has paid, with interest (id. ). The ***568 lien, however, is subordinate to a deduction for costs and attorney's fees (id. ). The statute was amended in 1975 (see L 1975, ch 190) to also provide: 'Should the employee or his dependents secure a recovery from [a third party], whether by judgment, settlement or otherwise, such employee or dependents may apply on notice to such lienor to the court in which the third party action was instituted, or to a court of competent jurisdiction if no action was instituted, for an order apportioning the reasonable and necessary expenditures, including attorney's fees, incurred in effecting *1228 **249 such recovery. Such expenditures shall be equitably apportioned by the court between the employee or his dependents and the lienor' ( Workers' Compensation Law, § 29, subd 1 ) ...
The impetus for amending the law to provide for allocation of litigation costs between the employee and the carrier ... was the desire to stem the inequity to the claimant, arising when a carrier benefits from an employee's recovery while assuming none of the costs incurred in obtaining the recovery, and to ensure that the claimant receives a full measure of the recovery proceeds in excess of the amount of statutory benefits otherwise due the claimant. It was determined that these interests would be most effectively served by equitably apportioning litigation costs. This concept was purposely adopted to avoid 'rigid statutory formulas' and to implement a 'practical and flexible' approach towards ensuring that a compensation carrier assumes its fair share of the costs of litigation (see Memorandum of N.Y. Law Rev Comm, op cit, p 1553; see, also, Becker v. Huss Co., 43 N.Y.2d 527, 543, 402 N.Y.S.2d 980, 373 N.E.2d 1205, supra). It is evident that the determination of what constitutes equitable apportionment of costs has been left to the courts"
( Matter of Kelly v. State Ins. Fund, 60 N.Y.2d 131, 135-138 [1983] ).
Twice previously we have been called upon to fashion a method for the equitable apportionment of legal expenses between claimants and carriers. In Matter of Kelly, we held that the legislative purpose underlying the 1975 amendments was best served by "an allocation formula that takes into consideration the full benefit a carrier receives from an employee's ***569 recovery in a third-party action" ( id. at 138, 468 N.Y.S.2d 850, 456 N.E.2d 791 ). That "full benefit" includes not only the past benefits paid (which the carrier may recoup via its lien) but also the present value of estimated future benefits (which the carrier will no longer have to pay out) ( id. at 135, 468 N.Y.S.2d 850, 456 N.E.2d 791 ). In Kelly, the petitioner received death benefits after her husband's untimely demise in a construction accident. Because death benefits are awarded at a fixed weekly rate until a spouse dies or remarries, the future value of those benefits could be ascertained with the aid of actuarial tables, reduced to its present value, subjected to a percent cost of litigation multiplier, and used to, among other things, reduce a carrier's lien or calculate its holiday period. In short, in Kelly as in the host of cases that followed its approach, when "the value of future compensation payments that a carrier has been relieved of paying due to a third-party recovery is not so speculative that it would be improper to estimate and to assess litigation costs against this benefit to the carrier," those costs should be apportioned at the time of any third-party settlement ( id. at 139, 468 N.Y.S.2d 850, 456 N.E.2d 791 ).
In Burns v. Varriale, we confronted the case of a claimant entitled to speculative benefits for a nonschedule permanent partial disability ( 9 N.Y.3d 207, 849 N.Y.S.2d 1, 879 N.E.2d 140 [2007] ). Because the value of the benefits associated with such a disability typically fluctuates with, inter alia, the claimant's income, we held that "it cannot be quantified or reliably predicted" and that it would thus "not be appropriate for a court to apportion attorney's fees based on a such a benefit" at the time of the third-party settlement ( id. at 215, 849 N.Y.S.2d 1, 879 N.E.2d 140 ). That unpredictability must not, however, result in a permanent windfall for the carrier. Instead, "the carrier should be required to periodically pay its equitable share of attorney's fees and costs" based on "actual, *1229 **250 nonspeculative" benefits as those once-speculative benefits accrue ( id. at 217, 849 N.Y.S.2d 1, 879 N.E.2d 140 ). We expected that pay-as-you-go process would apply in cases where "a claimant does not receive benefits for death, total disability[,] or schedule loss of use" ( id. at 215, 849 N.Y.S.2d 1, 879 N.E.2d 140 [emphasis omitted] ).
Neither Kelly nor Burns contemplated the sequence involved here, in which a third-party settlement was consummated before an award was determined. Here, although the Board ultimately recognized the inequity of its initial determination, it first misinterpreted Kelly and Burns as requiring that litigation costs apportioned against all schedule loss of use awards be either assigned at the time of the third-party settlement or not at all. The Appellate Division, believing the result was dictated by Burns and Kelly, affirmed.
***570 In Burns, we noted that "if a claimant does not receive benefits for death, total disability or schedule loss of use, the carrier's future benefit cannot be quantified by actuarial or other reliable means" ( 9 N.Y.3d at 215, 849 N.Y.S.2d 1, 879 N.E.2d 140 [emphasis omitted] ). The Board and Appellate Division mistakenly concluded that the inverse of that statement is true, but it is not. If a claimant does receive benefits for death, total disability or schedule loss of use, the carrier's future benefit sometimes can-but sometimes cannot-be quantified by actuarial or other reliable means at the time a third-party settlement is reached.
Whether a particular type of award can be reliably quantified at some point in time does not end the inquiry; rather, a court must determine whether the award is quantified at the time a third-party suit is resolved, such that the litigation expenses associated with that suit can be equitably apportioned in the allocation between claimant and carrier. Once awarded by the Board, schedule loss of use benefits "are easily ascertainable because such awards are paid out over a specific number of weeks at a set rate (or in a lump sum)" and litigation costs can be fairly apportioned thereto ( Burns, 9 N.Y.3d at 216, 849 N.Y.S.2d 1, 879 N.E.2d 140 ). When that loss of use has been determined prior to the resolution of the third-party action, those costs can be awarded when the judgment or settlement is obtained. When, as here, the present value of the loss of use or other benefits is not finalized at the time of the claimant's recovery in the third-party matter, the carrier must pay its fair share once the present value is determined. We emphasize once again: Kelly, Burns, and Workers' Compensation Law § 29 require carriers to bear their fair share of the litigation expenses.
NHIC also argues that Mr. Terranova contracted away any further rights to an equitable apportionment. By letter agreement, the parties stated that the "lien reimbursement reflects a reduction of the carrier's lien pursuant to Kelly v.[ ] State Insurance Funds [sic] and all parties reserve all their rights to Burns v.[ ] Varriale." The plain language of that agreement conditions Mr. Terranova's rights to equitable allocation of his expenses associated with his workers' compensation claim on our decision in this appeal: the proper interpretation of Burns. Indeed, NHIC's argument to the contrary is belied by Mr. Terranova's rejection of NHIC's initial tender of a proposed agreement by which Mr. Terranova would "forego any and all claims pursuant to Burns," as well as counsel's admission at argument that the carrier knew that Mr. Terranova's counsel meant ***571 to reserve those rights through the language actually adopted. Were there any ambiguities, they would "be resolved *1230 **251 against the carrier" ( Matter of Brisson v. County of Onondaga, 6 N.Y.3d 273, 279, 811 N.Y.S.2d 312, 844 N.E.2d 766 [2006] [internal quotation marks and citation omitted]; see also Matter of Stenson v. New York State Dept. of Transp., 84 A.D.3d 22, 26, 27-28, 919 N.Y.S.2d 584 [2011] ). As the Board and the Appellate Division implicitly concluded when deciding the case by applying our decisional law, the consent letter does nothing more than call for the application of section 29 as interpreted, at the Legislature's direction, by the courts.
Therefore, the order of the Appellate Division should be reversed, with costs, and case remitted to the Appellate Division with directions to remand the matter to the Workers' Compensation Board for further proceedings in accordance with this opinion.
Order reversed, with costs, and case remitted to the Appellate Division, Third Department, with directions to remand the matter to the Workers' Compensation Board for further proceedings in accordance with the opinion herein.
Chief Judge DiFiore and Judges Rivera, Stein, Fahey and Garcia concur. Judge Feinman took no part.