[820 NYS2d 655]

OWEN F. BURNS III et al., Respondents, v JAMES R. VARRIALE
JR., Respondent. ST. PAUL/TRAVELERS INSURANCE COMPANY,
Appellant. (And a Related Proceeding.)

Third Department, August 31, 2006

## APPEARANCES OF COUNSEL

*Sullivan, Cunningham, Keenan, Mraz, Oliver & Violando,*
*L.L.P.,* Albany (*Michael V. Violando* of counsel), for appellant.

*O'Connell & Aronowitz,* Albany (*Cornelius D. Murray* of
counsel), for Owen F. Burns III and another, respondents.

*Steven M. Licht, Special Funds Conservation Committee,*
Albany (*Melissa A. Day* of counsel), for Special Funds Conserva-
tion Committee.

## OPINION OF THE COURT

MERCURE, J.P.

The primary issue on this appeal is whether the value of
future workers' compensation benefits to be awarded to a
claimant with a nonschedule permanent, partial disability is
speculative. We hold that it is and therefore reverse Supreme
Court's apportionment of counsel fees under Workers' Compen-
sation Law § 29 (1) based on such future benefits.

In January 2003, plaintiff Owen F. Burns III (hereinafter
plaintiff), a traffic safety investigator for the Town of Colonie
Police Department, was injured during the course of his employ-
ment when his police vehicle was struck by a vehicle driven by
defendant. As a result of the accident, plaintiff was designated
permanently partially disabled by the Workers' Compensation
Board. St. Paul/Travelers Insurance Company (hereinafter
Travelers), the workers' compensation carrier, was directed to
pay plaintiff a weekly sum at a rate of $400. Thereafter, plaintiff
and his wife, derivatively, commenced a negligence action
against defendant. The parties in that action agreed to a settle-
ment in the amount of $300,000.

Travelers ultimately consented to the settlement while reserv-
ing its right to take a credit for payment of future compensation
against plaintiff's net recovery and to seek satisfaction of its
existing lien for benefits it had paid, after deduction of its pro
rata share of counsel fees (*see* Workers' Compensation Law § 29
[1], [4]). At the time of the settlement, Travelers had a total
lien of $46,523.26, reflecting actual payments by Travelers of
$96,523.26 less $50,000 paid in lieu of first-party no-fault
benefits. Thereafter, plaintiffs moved for, among other things,
an order directing Travelers to pay them approximately $20,000

in "fresh money" for litigation expenses incurred in the personal injury action. Supreme Court granted plaintiffs' motion and Travelers now appeals.[1] Because we conclude that Supreme Court's apportionment of counsel fees based on plaintiff's future compensation benefits was speculative, we now reverse in part.

Workers' Compensation Law § 29 (1) provides that an employee who is injured during the course of his or her employment by the negligence of a third-party tortfeasor may seek workers' compensation benefits and simultaneously bring an action against the third party. In order to prevent a double recovery in the event that the claimant prevails against the third party, the statute grants the workers' compensation carrier a lien on the proceeds of the recovery equal to the amount of past compensation paid, with interest, but less a deduction for costs and counsel fees (see Workers' Compensation Law § 29 [1]; *Becker v Huss Co.*, 43 NY2d 527, 538 [1978]). Similarly, section 29 (4) provides a credit or offset, which is a holiday that the workers' compensation carrier receives from payment of future benefits to a claimant until the proceeds recovered by the claimant in a personal injury action are exhausted (see Minkowitz, Practice Commentaries, McKinney's Cons Laws of NY, Book 64, Workers' Compensation Law § 29, at 199-200). If such proceeds are exhausted, "the compensation carrier must award compensation for the deficiency 'between the amount of the recovery . . . actually collected, and the compensation provided or estimated' " under the statute, with the amount "actually collected" defined as "recovery proceeds remaining after deduction for litigation costs" (*Matter of Kelly v State Ins. Fund*, 60 NY2d 131, 138-139 [1983], quoting Workers' Compensation Law § 29 [4]; see *Matter of Curtin v City of New York*, 287 NY 338, 343-344 [1942]).

The statute requires that the carrier pay for the benefits it receives as a result of a claimant's efforts in a third-party action by contributing its equitable share of the litigation expenses, including counsel fees, incurred by the claimant (see Workers' Compensation Law § 29 [1]; *Matter of Kelly v State Ins. Fund*,

---

1. Supreme Court also determined that Travelers could not shift liability for plaintiffs' litigation expenses to the Special Funds Conservation Committee. Special Funds and Travelers have since agreed that the provisions of Workers' Compensation Law § 15 (8) (d) do apply and, thus, that portion of Supreme Court's order that denied Travelers such reimbursement is not before us on this appeal.

*supra* at 138; *Becker v Huss Co., supra* at 538-589). It is well settled that "the compensation carrier's equitable share of litigation costs incurred by the claimant [is] apportioned on the basis of the *total benefit* that the carrier derives" (*Matter of Kelly v State Ins. Fund, supra* at 135 [emphasis added]). Thus, generally, a carrier's equitable share of the costs is assessed "as a percentage of the total of the amount of past benefits paid (which the carrier will recoup by enforcing its lien in that amount on the recovery) and the present value of estimated future benefits to [a] claimant (which the carrier will not have to pay because of claimant's recovery)" (*id.*), when such future benefits are ascertainable. Requiring the carrier to pay counsel fees up front on expected and predictable future benefits is consistent with the policy underlying the statute of encouraging claimants to seek recovery against third-party tortfeasors, with the potential for an earlier realization of benefits operating as an inducement to claimants to seek such a recovery (*see Matter of Di Meglio v Hartford Ins. Co.*, 116 Misc 2d 191, 196 [1982]).

In contrast, where "the value of the future benefit derived by [the carrier] as a result of [a claimant's] recovery in the action against the third party cannot be ascertained and is entirely speculative," an apportionment of counsel fees based on such future benefits is not feasible (*Matter of Briggs v Kansas City Fire & Mar. Ins. Co.*, 121 AD2d 810, 812 [1986]). That is, where the carrier's "obligation to pay future benefits . . . cannot be quantified 'by actuarial or other reliable means' . . . [,] the present value of the estimated future compensation payments that [the carrier] would have become obligated to make cannot be ascertained" by the courts (*Matter of McKee v Sithe Independence Power Partners*, 281 AD2d 891, 891 [2001], quoting *Matter of Briggs v Kansas City Fire & Mar. Ins. Co., supra* at 812). Travelers and the Special Funds Conservation Committee assert that such a situation is presented when, as here, a claimant receives a permanent partial disability award, as opposed to an award for death benefits, permanent total disability or schedule loss of use. We agree.

An award for death benefits, permanent total disability or schedule loss of use does not fluctuate and the duration of the benefits is predictable. For example, the present value of death benefits to be paid to a dependent spouse may be calculated with the use of actuarial tables that take into account the spouse's life expectancy and probability that he or she will remarry (*see Matter of Kelly v State Ins. Fund, supra* at 139).

Similarly, when a claimant is permanently and totally disabled, there is an expectation that the claimant will receive payment at a certain amount every week for his or her life, the duration of which can be predicted (*see Wood v Firestone Tire & Rubber Co.*, 123 Misc 2d 812, 815 [1984]). An award for a schedule loss of use is for a static rate for a specific number of weeks (*see* Workers' Compensation Law § 15 [3]) and, therefore, involves no speculation.

When a claimant has a permanent partial disability, however, neither the duration nor the amount of an award is readily predictable because the award may or may not continue for the rest of the claimant's life and the weekly benefit of an award can change based upon the claimant's actual earnings (*see generally Matter of Leeber v LILCO*, 29 AD3d 1198 [2006]; *Matter of Tipping v National Surface Cleaning Mgt., Inc.*, 29 AD3d 1200, 1201 [2006, Carpinello, J., concurring]). While a finding of permanent partial disability gives rise to an inference that a reduction in wages is related to the disability, the initial burden remains on the claimant to demonstrate that "reduced earning capacity is [not] due to age, general economic conditions or other factors unrelated to the disability"—i.e., that the reduction was involuntary (*Matter of Meisner v United Parcel Serv.*, 243 AD2d 128, 130 [1998], *lv dismissed* 93 NY2d 848 [1999], *lv denied* 94 NY2d 757 [1999]; *see Matter of Rothe v United Med. Assoc.*, 18 AD3d 1093, 1094 [2005]; *Matter of Thompson v Saucke Bros. Constr. Co.*, 2 AD3d 993, 993 [2003], *lv denied* 2 NY3d 703 [2004]; *Matter of Scarpelli v Bevco Trucking Corp.*, 305 AD2d 892, 893 [2003]). Despite a classification as having a permanent partial disability and receipt of benefits in the past, a claimant who voluntarily withdraws from the labor market entirely loses entitlement to future benefits (*see Matter of Rothe v United Med. Assoc., supra* at 1094; *Matter of Scarpelli v Bevco Trucking Corp., supra* at 893; *Matter of Capezzuti v Glens Falls Hosp.*, 282 AD2d 808, 810 [2001]; *see also Matter of Coneys v New York City Dept. of Mental Health*, 299 AD2d 602, 602-603 [2002]). Further, even where a claimant has retired and that retirement is found by the Workers' Compensation Board to be involuntary, the carrier remains free to return before the Board to demonstrate by " 'direct and positive proof that something other than the disability [is] the sole cause of claimant's reduced earning capacity after retirement' " (*Matter of Leeber v LILCO, supra* at 1199, quoting *Matter of Pittman v ABM Indus., Inc.*, 24 AD3d 1056, 1058 [2005]; *see Matter of Pepe v City & Suburban*,

29 AD3d 1184 [2006]). Thus, unlike an award for permanent total disability, the duration of which is to last for the rest of a claimant's life, the duration of an award for permanent partial disability is not readily predictable because it depends on factors unconnected with the disability—such as general economic conditions or a claimant's desire to cease working—that are not readily ascertainable (*see Matter of Rothe v United Med. Assoc., supra* at 1094; *Matter of Yamonaco v Union Carbide Corp.,* 42 AD2d 1014, 1014-1015 [1973]).

Moreover, if the claimant meets his or her burden of demonstrating that a diminution in earnings is related to disability and " 'actual earnings during the period of the disability are established, wage earning capacity must be determined *exclusively by the actual earnings of the injured employee without evidence of capacity to earn more or less'* " (*Matter of Meisner v United Parcel Serv., supra* at 131, quoting *Matter of Matise v Munro Waterproofing Co.,* 293 NY 496, 500 [1944] [emphasis added]; *see generally Matter of Pittman v ABM Indus., Inc., supra* at 1057 [explaining that once a claimant establishes that retirement is involuntary because a disability caused or contributed to his or her decision to retire, a failure to seek employment despite capacity to do so will not result in a denial of benefits]; *Matter of Jiminez v Waldbaums,* 9 AD3d 99, 100-101 [2004] [same]). The amount of the benefit awarded to a permanently partially disabled claimant is two thirds of the "difference between his [or her] average weekly wages and his [or her] wage-earning capacity thereafter in the same employment or otherwise" (Workers' Compensation Law § 15 [3] [w]). Here, plaintiff's average weekly wage was $1,330, or $69,160 annually, prior to his injury; in 2004, he earned approximately $7,500, entitling him to a tentative weekly award of $400, the maximum weekly benefit. His future income, however, is uncertain because plaintiff has not suffered a total loss of wages and his benefits are subject to change depending on whether his actual wages in the future increase (*see Matter of Meisner v United Parcel Serv., supra* at 131).

Contrary to Supreme Court's conclusion, there is no inference of a permanent and total loss of wages upon a finding of a permanent, *partial* disability, as opposed to a permanent, *total* disability. While it may be reasonably concluded that a claimant who is permanently and totally disabled will suffer a total loss of income in the future, such a conclusion is not warranted in the case of a claimant with a permanent, partial disability who

has not retired and is obligated to demonstrate a continued attachment to the labor market (*see Matter of Tipping v National Surface Cleaning Mgt., Inc., supra* at 1202 [Carpinello, J., concurring]; *Matter of Rothe v United Med. Assoc., supra* at 1094). Inasmuch as plaintiff's actual future earnings and continued attachment to the labor market constitute unknown variables that cannot be reliably predicted, the rate and the duration of his benefits are subject to change and, thus, any calculation of the present value of his future benefit amount would be speculative. In the absence of a reliable method by which the present value of plaintiff's future benefits can be estimated, counsel fees cannot be apportioned on those benefits at this time. Accordingly, Travelers may recover the amount of its lien, $46,523.26, reduced by its equitable share of the costs incurred in recovering the lien amount, i.e., the percentage of the total recovery that it cost plaintiffs in counsel fees and disbursements to bring the action, or 34.82% (*see Matter of Kelly v State Ins. Fund*, 60 NY2d 131, 136 [1983], *supra*).[2] This amounts to a $30,323.86 recovery for Travelers.

We note that if, upon plaintiff's application, the Workers' Compensation Board determines—in the same manner that it would after the carrier's offset is exhausted—that he is entitled to continued compensation benefits, the Board shall direct further reimbursement of counsel fees by Travelers based on the amount of those benefits and the 34.82% rate that we have determined to be the carrier's equitable share of the cost incurred in obtaining the benefits to the carrier (*see Matter of Russo v New York City Dept. of Correction*, 9 AD3d 528, 530 [2004]; *see also* Workers' Compensation Law § 20 [1]). In other words, if plaintiff would have received further compensation benefits-but for the settlement-between the time of settlement and exhaustion of the carrier's holiday, the carrier will be required at that point to pay its equitable share of the cost of obtaining those benefits, which can no longer be deemed hypothetical or speculative, as those benefits accrue.[3] Thus, here, the carrier will be liable, subject to reimbursement from Special Funds, for 34.82% of the full amount of the

---

**2.** The parties are in agreement that the pro rata percentage, obtained by dividing the amount of legal expenses by the gross recovery of $300,000, is 34.82%.

**3.** For example, if upon plaintiff's application, the Workers' Compensation Board determines that the tentative rate of $400 per week remains applicable, plaintiff would be entitled to 34.82% of that amount, or $139.28 per week from Travelers, until the carrier credit is exhausted.

compensation benefit that plaintiff would have been entitled to receive (but for his recovery in the third-party action) until the carrier's offset is exhausted (*see generally* Minkowitz, Practice Commentaries, McKinney's Cons Laws of NY, Book 64, Workers' Compensation Law § 29, at 199-200).

In light of our determination, the parties' remaining arguments are academic.

SPAIN, CARPINELLO, ROSE and KANE, JJ., concur.

Ordered that the order is modified, on the law, without costs, by reversing so much thereof as directed St. Paul/Travelers Insurance Company to pay $18,960.92 in "fresh money" to plaintiffs; plaintiffs are directed to pay $30,323.86 to St. Paul/Travelers Insurance Company; and, as so modified, affirmed.