[879 NE2d 140, 849 NYS2d 1]

Owen F. Burns III et al., Appellants, v James R. Varriale Jr., Defendant, and St. Paul/Travelers Insurance Company, Respondent. (And a Related Proceeding.)

Argued September 4, 2007; decided October 11, 2007

### POINTS OF COUNSEL

*O'Connell and Aronowitz,* Albany (*Cornelius D. Murray* and *Robyn B. Nicoll* of counsel), for appellants. I. The Appellate Division applied an erroneous standard of law in reversing the trial court's exercise of discretion in equitably apportioning attorneys' fees pursuant to Workers' Compensation Law § 29. (*Becker v Huss Co.,* 43 NY2d 527; *Smith v Spinoccia,* 119 AD2d 660; *Matter of Wolfe v Sibley, Lindsay & Curr Co.,* 36 NY2d 505; *Matter of Heitz v Ruppert,* 218 NY 148; *Matter of Illaqua v Barr-Llewellyn Buick Co.,* 81 AD2d 708; *Matter of Kelly v State Ins. Fund,* 60 NY2d 131; *Matter of Briggs v Kansas City Fire & Mar. Ins. Co.,* 121 AD2d 810; *Matter of McKee v Sithe Independence Power Partners,* 281 AD2d 891; *Matter of Leeber v LILCO,* 29 AD3d 1198; *Matter of Tipping v National Surface Cleaning Mgt., Inc.,* 29 AD3d 1200.) II. The Appellate Division usurped its authority by, in effect, rewriting the statute so as to empower the Workers' Compensation Board, rather than the court, to apportion legal fees. (*Matter of Hunter,* 4 NY3d 260.)

*Sullivan Cunningham Keenan Mraz Oliver & Violando, LLP,* Albany (*Michael D. Violando* of counsel), for James R. Varriale, Jr., and another, defendant and respondent. I. The Appellate Division's decision finding it too speculative to determine the value of future benefits in this case where the claimant has a nonschedule permanent partial disability was in all respects proper, supported by case law and should not be disturbed. (*Matter of Kelly v State Ins. Fund,* 60 NY2d 131; *Becker v Huss Co.,* 43 NY2d 527; *Matter of Briggs v Kansas City Fire & Mar. Ins. Co.,* 121 AD2d 810; *O'Connor v Lee Hy Paving Corp.,* 480 F Supp 716; *Castleberry v Hudson Val. Asphalt Corp.,* 70 AD2d 228; *Wood v Firestone Tire & Rubber Co.,* 123 Misc 2d 812; *Matter of Di Meglio v Hartford Ins. Co.,* 116 Misc 2d 191; *Matter of McKee v Sithe Independence Power Partners,* 281 AD2d 891; *Matter of Meisner v United Parcel Serv.,* 243 AD2d 128, 93 NY2d 848, 94 NY2d 757; *Matter of Rothe v United Med. Assoc.,* 18 AD3d 1093.) II. The Appellate Division's dicta did not illegally transfer powers of the court to the Workers' Compensation Board. (*Matter of Kelly v State Ins. Fund,* 60 NY2d 131.)

*Melissa A. Day,* New York City, and *Steven M. Licht* for Special

Funds Conservation Committee, respondent. I. When the Workers' Compensation Board has classified an injured worker as having a permanent partial disability, the present day value of the future benefit to the carriers cannot be calculated without speculation as the rate and the duration of the benefits are susceptible to change. (*Matter of Curtin v City of New York*, 287 NY 338; *Matter of Briggs v Kansas City Fire & Mar. Ins. Co.*, 121 AD2d 810; *Matter of Kelly v State Ins. Fund*, 60 NY2d 131; *Matter of McKee v Sithe Independence Power Partners*, 281 AD2d 891; *Matter of Thompson v Saucke Bros. Constr. Co.*, 2 AD3d 993; *Matter of Coneys v New York City Dept. of Mental Health*, 299 AD2d 602.) II. The most equitable method for having a carrier pay its costs associated with its total benefit as required by *Matter of Kelly v State Ins. Fund* (60 NY2d 131 [1983]) is through payment of the costs associated with the benefit as it is realized. (*Matter of Andersen v New York Hosp.*, 5 AD2d 730.) III. This case is a perfect example of why it is futile to speculate about the present day value of the carriers' future obligation when the claimant has been classified as having a permanent partial disability.

*Grey & Grey, LLP*, Farmingdale (*Robert E. Grey* of counsel), for Injured Workers' Bar Association, amicus curiae. I. The decision of the Appellate Division, Third Department is contrary to settled law regarding the applicability of the Court of Appeals decision in *Matter of Kelly v State Ins. Fund* (60 NY2d 131 [1983]). (*Becker v Huss Co.*, 43 NY2d 527; *Smith v Spinoccia*, 119 AD2d 660; *Matter of Briggs v Kansas City Fire & Mar. Ins. Co.*, 121 AD2d 810; *Matter of Theresa M.C. v Utilities Mut. Ins. Co.*, 207 AD2d 481; *Matter of McKee v Sithe Independence Power Partners*, 281 AD2d 891; *McComber v Lehrer McGovern Bovis, Inc.*, 28 AD3d 402; *Martin v Agway Petroleum Corp.*, 161 AD2d 1129.) II. The Third Department's reliance on "voluntary withdrawal" cases in finding permanent partial disability awards too speculative to support the application of *Matter of Kelly v State Ins. Fund* (60 NY2d 131 [1983]) is incorrect as a matter of law. (*Matter of Dudlo v Polytherm Plastics*, 125 AD2d 792; *Matter of Topf v American Character Doll & Toy Co.*, 62 AD2d 1111; *Matter of Regulbuto v Carrier Corp.*, 158 AD2d 817; *Matter of O'Connell v New York State Workmen's Compensation Bd.*, 14 AD2d 945; *Matter of Gugino v New York State Workmen's Compensation Bd.*, 31 AD2d 698; *Matter of Mazziotto v Brookfield Constr. Co.*, 40 AD2d 245; *Matter of Roberts v General Elec. Co.*, 6 AD2d 43; *Matter of Elwood v K-Mart Corp.*, 289 AD2d 794; *Matter of Camarda v New York Tel.*, 262 AD2d 816; *Matter*

*of Landi v Carrier Corp.,* 125 AD2d 789.) III. The decision of the Appellate Division, Third Department improperly and unnecessarily transfers the burden of adjudication from the courts to the Workers' Compensation Board. (*Matter of Kelly v State Ins. Fund,* 60 NY2d 131; *Becker v Huss Co.,* 43 NY2d 527.)

### OPINION OF THE COURT

JONES, J.

In this proceeding to extinguish a lien asserted pursuant to Workers' Compensation Law § 29, we conclude, as did the Appellate Division, that the value of future workers' compensation benefits for a claimant with a nonschedule permanent partial disability is speculative, that the present value of these benefits cannot be ascertained at the time claimant recovers damages in a third-party action, and that claimant is not entitled to an apportionment of attorney's fees based on such future benefits.

### Facts and Procedural History

In January 2000, claimant Owen Burns, then an 18-year veteran of the Town of Colonie Police Department, was employed as a traffic safety investigator earning an average weekly wage of $1,330, or $69,160 annually. On January 13, 2000, claimant, while on duty driving to an accident scene, was involved in a motor vehicle accident with James Varriale. As a result, claimant sustained a number of permanent injuries. On September 2, 2001, after a number of attempts to resume his duties, claimant, then 45 years old, was forced to retire. Although claimant has worked since his retirement, his earnings have decreased significantly.

Subsequently, the Workers' Compensation Board classified claimant as permanently partially disabled and ordered St. Paul/ Travelers Insurance Company (the Town of Colonie's workers' compensation carrier) to pay claimant an ongoing maximum benefit of $400 per week. This benefit was based on claimant's average weekly wage before the accident.

In June 2001, claimant (and his wife, derivatively) (plaintiffs) commenced a personal injury action against Varriale. After the completion of discovery and the filing of plaintiffs' note of issue, a trial date was scheduled. Prior to trial, Varriale's insurance company offered the full amount of his policy ($300,000) to settle the lawsuit. Travelers, which had asserted a lien against any recovery plaintiffs received, was required, under Workers' Compensation Law § 29 (5), to consent to the proposed settlement before it could be finalized.

In November 2004, plaintiffs petitioned Supreme Court for an order (1) compelling Travelers to consent to the third-party settlement, (2) extinguishing Travelers' lien because under *Matter of Kelly v State Ins. Fund* (60 NY2d 131 [1983]), Travelers' equitable share of the attorney's fees expended by plaintiffs in bringing the action and securing the settlement exceeded the amount of the lien by approximately $19,000 and (3) directing Travelers to pay plaintiffs this excess amount (referred to as "fresh money").

In its opposition and cross motion to add the Special Funds Conservation Committee to the motion,[1] Travelers consented to the third-party settlement, but reserved its right, under Workers' Compensation Law § 29 (4), to take a credit against plaintiffs' net recovery (i.e., the money received from settling the third-party action after deduction of the lien). Accordingly, Travelers would be relieved from paying future benefits until the credit is exhausted (i.e., during a "holiday" period). Travelers also asked Supreme Court to apply a portion of the settlement proceeds against its existing lien after the deduction of its pro rata share (34.82%), which represents the percentage of litigation costs and disbursements plaintiffs incurred in bringing the action compared to plaintiffs' total recovery. At the time of the settlement, Travelers' lien totaled $46,523.26.[2] Further, Travelers sought an order (1) determining that the present value of estimated future compensation benefits cannot be reasonably ascertained because the value of any future benefits is necessarily speculative and (2) directing claimant to pay it $30,323.86, representing the value of its lien reduced by its equitable share of the costs plaintiffs incurred in legal fees and disbursements ($46,523.26 [value of lien] less $16,199.40 [34.82% of $46,523.26] = $30,323.86). In the alternative, Travelers argued that if the present value of estimated future compensation benefits could be ascertained, the Special Funds Conservation Committee should be directed to pay its pro rata share as it is responsible for the majority of litigation costs and disbursements.

Rejecting Travelers' arguments, Supreme Court granted the relief plaintiffs requested. Specifically, the court extinguished

---

1. The Special Funds Conservation Committee maintains and defends the Special Disability Fund (*see* Workers' Compensation Law § 15 [8]).

2. This figure is derived from Travelers' total payments to claimant ($96,523.26 [$76,960 for indemnity benefits plus $19,563.26 for medical benefits]) less $50,000 it paid in lieu of first-party no-fault benefits.

Travelers' lien and ordered Travelers to pay $18,960.92 in "fresh money" to plaintiffs, stating that

> "[w]ith [claimant's] limited employment and currently assessed future benefits, it is not speculative to calculate future benefits. Once weekly benefits can be ascertained, the worker's compensation carrier . . . is assessed an equitable apportionment of legal fees. This is so because the carrier benefits in two ways: by recouping past compensation and by [being relieved of] its future obligations to pay the weekly benefits." (Citation omitted.)

The Appellate Division modified Supreme Court's order by (1) reversing so much thereof as directed Travelers to pay plaintiffs $18,960.92 in "fresh money" and (2) directing plaintiffs to pay $30,323.86 to Travelers to represent the value of its lien reduced by its equitable share of the litigation costs, but otherwise affirmed the order. The court held that a claimant who receives a compensation award based on a permanent partial disability is not entitled to an immediate apportionment of attorney's fees based on both the carrier's recoupment of its lien and its relief from future compensation payments because, in this situation, the present value of future compensation benefits is speculative. In support of its holding, the court stated that "[w]hen a claimant has a permanent partial disability . . . neither the duration nor the amount of an award is readily predictable because the award may or may not continue for the rest of the claimant's life and the weekly benefit of an award can change based upon the claimant's actual earnings" (34 AD3d 59, 63 [2006]). The court further stated that a claimant is only entitled to an apportionment of attorney's fees based upon the present value of future compensation benefits where the benefits are readily ascertainable, such as in cases involving death, permanent total disability or a schedule loss of use.

Finally, the court noted that claimant may periodically apply to the Board for further compensation benefits and, if claimant is entitled to a benefits award, the Board may direct further reimbursement of attorney's fees; i.e., if the Board awards further compensation benefits to claimant during the carrier's holiday, "the carrier will be required at that point to pay its equitable share of the cost of obtaining those benefits, which can no

longer be deemed hypothetical or speculative, as those benefits accrue" (*id.* at 65). On plaintiffs' appeal, we now affirm.[3]

### Discussion

It is well settled that "[Workers' Compensation Law § 29] governs the rights and obligations of employees, their dependents, and compensation carriers with respect to actions arising out of injuries caused by third-party tort-feasors" (*Matter of Kelly*, 60 NY2d at 136; *see Becker v Huss Co.*, 43 NY2d 527, 537 [1978]). Section 29 (1) provides, in part, that:

"If an employee entitled to compensation under this chapter be injured or killed by the negligence or wrong of another not in the same employ, such injured employee . . . may take such compensation and medical benefits and . . . pursue his remedy against such other [party] . . . . In such case, the . . . insurance carrier liable for the payment of such compensation . . . shall[—in order to prevent the employee from enjoying a double recovery—]have a lien on the proceeds of any recovery from such other [party] . . . after the deduction of the reasonable and necessary expenditures, including attorney's fees, incurred in effecting such recovery, to the extent of the total amount of compensation awarded under or provided or estimated by this chapter . . . . Should the employee . . . secure a recovery from such other [party] . . . such employee . . . may apply on notice to such lienor to the court in which the third party action was instituted . . . for an order apportioning the reasonable and necessary expenditures, including [attorney's] fees, incurred in effecting such recovery. Such expenditures shall be equitably apportioned by the court between the employee . . . and the lienor."

The purpose of this provision is to

"stem the inequity to the claimant[ ], arising when a carrier benefits from an employee's recovery while

---

**3.** By decision filed April 5, 2007, an Administrative Law Judge determined that for the period of November 3, 2004 to March 15, 2007, claimant had no legally compensable lost time or entitlement to benefit awards. In support of this determination, the Board found that "claimant has failed to demonstrate a sufficient attachment to the labor market to [warrant] further benefits." An administrative appeal is pending.

assuming none of the costs incurred in obtaining
the recovery, and to ensure that the claimant
receives a full measure of the recovery proceeds in
excess of the amount of statutory benefits otherwise
due the claimant" (*Matter of Kelly*, 60 NY2d at 138).

Moreover, equitable apportionment by the court "was purposely
adopted to avoid 'rigid statutory formulas' and to implement a
'practical and flexible' approach towards ensuring that a
compensation carrier assumes its fair share of the costs of liti-
gation" (*id.* [citations omitted]).

Workers' Compensation Law § 29 (4) provides that the carrier
is responsible for any deficiency between a claimant's actual
recovery, i.e., the amount actually collected, and the amount of
the compensation provided or estimated under the Workers'
Compensation Law.

"[Section 29 (4)] has been construed to mean that
in a deficiency case the amount 'actually collected'
by the employee is the recovery proceeds remaining
after deduction for litigation costs . . . . Therefore,
the carrier assumes the *entire* cost of obtaining the
recovery, as its responsibility to make payments is
reduced only by the amount 'actually collected' by
claimant" (*Matter of Kelly*, 60 NY2d at 138-139
[citation omitted]).

"The ultimate determination of the equitable apportionment of
legal expenses . . . resides in the courts vested with the powers
of fact finding and the exercise of a sound discretion" (*Becker*,
43 NY2d at 544). Whether, under the circumstances presented
here, the value of future compensation benefits can be ascer-
tained is a question of law subject to this Court's review (*see
id.*).

In *Matter of Kelly*, petitioner was awarded death benefits
under Workers' Compensation Law § 16 after her husband was
killed in the course of his employment. After petitioner brought
a wrongful death action and recovered $315,000, she applied to
the Surrogate's Court for an equitable distribution of the
recovery proceeds between her and the compensation carrier.
We held that a carrier's equitable share of the litigation costs
and disbursements incurred by a claimant must be apportioned
based on the total benefit the carrier receives (*see Matter of
Kelly*, 60 NY2d at 135, 140). Regarding the carrier's total bene-
fit, we noted that when a claimant recovers damages in a third-
party action, a carrier benefits in two ways—i.e., the carrier

recoups its lien (past benefits paid out to the claimant) and is relieved of its future obligation to make benefit payments to the claimant (due to its section 29 [4] credit) (*id.* at 135).[4] In recognizing that the carrier's future benefit must be taken into account, we stated that it "is not so speculative that it would be improper to estimate and to assess litigation costs against this benefit to the carrier" (*Matter of Kelly*, 60 NY2d at 139). From this statement it follows that if the carrier's future benefit is speculative (i.e., it cannot be quantified or reliably predicted), it would not be appropriate for a court to apportion attorney's fees based on such benefit.

Following the lead of *Matter of Kelly*, a number of courts, apportioning attorney's fees based on a carrier's future benefit, have held that if the value of such benefit cannot be quantified by actuarial or other reliable means, apportionment of fees based on that benefit is impermissible (*see Matter of Briggs v Kansas City Fire & Mar. Ins. Co.*, 121 AD2d 810, 812 [3d Dept 1986]; *Matter of McKee v Sithe Independence Power Partners*, 281 AD2d 891 [4th Dept 2001]).[5] Moreover, the Third and Fourth Departments have held that if a claimant does not receive benefits for death, *total* disability or schedule loss of use, the carrier's future benefit cannot be quantified by actuarial or other reliable means (*id.*). We agree.

When an employee dies in the course of employment, the dependent spouse may be awarded weekly death benefits for life—payable at a rate that does not change—unless the spouse remarries (*see* Workers' Compensation Law § 16). Further, the Board can determine the present value of future death benefits by using actuarial tables that take into account the dependent spouse's life expectancy and the probability of remarriage. When an employee is classified as having a permanent *total* disability, there is no expectation that he or she will rejoin the work force.

---

4. Under *Matter of Kelly*, the carrier's equitable share is calculated by (1) adding (a) the carrier's lien and (b) the future payments the carrier is relieved from making during the holiday period, and (2) multiplying the sum of those two figures by the percentage of litigation expenses claimant incurred compared to claimant's total recovery. If the carrier's equitable share is greater than its lien, it must pay the excess to claimant.

5. Although *Matter of Briggs* and *Matter of McKee* are factually distinguishable from the case at bar, the distinction is insignificant because these cases focus on (1) the character of the particular classification (i.e., whether the rate and duration of an award based on that classification can be quantified or predicted), and (2) whether, in light of the classification, the present value of future benefits can be accurately ascertained. Accordingly, these cases are helpful in resolving the case at bar.

Accordingly, the compensation benefits awarded to such employee do not fluctuate and continue for the duration of the employee's life, which can be reliably predicted using life expectancy tables (*see* Workers' Compensation Law § 15 [1]). Finally, compensation awards for schedule loss of use, which pay an employee for lost earnings associated with the loss of use of a specific body part, are easily ascertainable because such awards are paid out over a specific number of weeks at a set rate (or in a lump sum) (*see* Workers' Compensation Law § 15 [3]). Although there is a measure of uncertainty in all forecasts, a forecast of the future course of, and compensation payments resulting from, a permanent partial disability is substantially more uncertain than a comparable forecast in the cases discussed above.

If the Board determines that a workers' compensation claimant has a permanent *partial* disability and that the claimant retired from his or her job due to that disability, an inference that his or her reduced future earnings resulted from the disability may be drawn. Claimant must demonstrate that his or her reduced earning capacity is due to the disability, not "age, general economic conditions or other factors unrelated to the disability" (*Matter of Meisner v United Parcel Serv.*, 243 AD2d 128, 130 [3d Dept 1998]). The carrier can overcome the inference by offering proof that something other than the disability—e.g., voluntary withdrawal from the labor market—is the sole cause of claimant's reduced earning capacity (*see Matter of Leeber v LILCO*, 29 AD3d 1198, 1199 [3d Dept 2006]; *Matter of Tipping v National Surface Cleaning Mgt., Inc.*, 29 AD3d 1200, 1200-1201 [3d Dept 2006]; *Matter of Rothe v United Med. Assoc.*, 18 AD3d 1093, 1094 [3d Dept 2005]). Thus, in a permanent partial disability case, whether a claimant has maintained a sufficient attachment to the labor market must be resolved by the Board in determining his or her reduced earning capacity and whether benefits should be awarded.

A claimant who demonstrates that his or her reduced earnings are related to the partial disability may receive a reduced earnings award (*see* Workers' Compensation Law § 15 [3] [w]). The weekly rate for such award equals 66⅔% of the difference between claimant's average weekly wage prior to the disability and "his or her wage-earning capacity thereafter" (*id.*). "The wage earning capacity of an injured employee in cases of partial disability shall be determined by his [or her]

actual earnings" during the period of the disability (Workers' Compensation Law § 15 [5-a]; *see also Matter of Matise v Munro Waterproofing Co.*, 293 NY 496, 500 [1944] ["where actual earnings during the period of the disability are established, wage earning capacity must be determined exclusively by the actual earnings of the injured employee without evidence of capacity to earn more or less during such disability period"]). Therefore, in addition to establishing a sufficient attachment to the labor market, a permanent partially disabled claimant who alleges that he or she works must provide the Board with proof of actual earnings after the work for a given period is performed.

Here, the Board's determination that claimant has a permanent partial disability did not entitle him to weekly compensation benefits at a specific rate over his life or over a set period. Claimant has an ongoing obligation to demonstrate his continued attachment to the labor market and how much he actually earns. However, as these variables cannot be reliably predicted, the rate and duration of benefits awarded by the Board may change from one period to the next. Thus, at the time a permanently partially disabled claimant recovers damages in a third-party action, the value of future compensation benefits is speculative.

Even if the present value of the future benefits cannot be ascertained at the time of claimant's recovery in a third-party action, the carrier should be required to periodically pay its equitable share of attorney's fees and costs incurred by claimant in securing any continuous compensation benefits. We note that because the present value of future benefits in a permanent partial disability case is not ascertainable, the court cannot use these benefits for purposes of calculating the carrier's equitable share of the claimant's attorney's fees and costs. This does not mean that the claimant must wait indefinitely for the carrier to pay its equitable share. The trial court, in the exercise of its discretion, can fashion a means of apportioning litigation costs as they accrue and monitoring (e.g., by court order or stipulation of the parties) how the carrier's payments to the claimant are made. Thereby, the court can ensure that the payment of attorney's fees by the carrier is based on an actual, nonspeculative benefit.

Accordingly, the order of the Appellate Division should be affirmed, with costs.

218

Chief Judge Kaye and Judges Ciparick, Graffeo, Read, Smith and Pigott concur.

Order affirmed, with costs.