OPINION OF THE COURT
Patrick H. NeMoyer, J.
*240 Before this court are a petition by the injured employee and a cross motion by the workers’ compensation insurance carrier for a judicial determination of (a) the amount of the workers’ compensation lien to be enforced against the proceeds of settlement of the injured employee’s tort or personal injury action, and (b) of the carrier’s obligation to make future workers’ compensation payments to the injured employee (see generally Workers’ Compensation Law § 29 [1], [4]). Basically, the carrier would have the court set the amounts of the lien and the future benefits in accordance with section 29, as construed by such cases as Matter of Kelly v State Ins. Fund (60 NY2d 131 [1983]) and Burns v Varriale (9 NY3d 207 [2007]). The injured employee, on the other hand, asks the court to set the amount of the lien and ongoing payments based additionally upon those equitable considerations outlined in a Medicaid lien case out of the United States Supreme Court, Arkansas Dept, of Health & Human Servs. v Ahlborn (547 US 268 [2006]). On the basis of the parties’ submissions, this court renders the following determinations:
The Undisputed Facts
Gary A. Scheer (petitioner or the injured worker) was injured on February 13, 2001 while working at a construction site owned or controlled by respondent Huntley Power, LLC (Huntley). Petitioner sought benefits from his employer’s workers’ compensation carrier, New York State Insurance Fund (the carrier or respondent), and petitioner and his wife further commenced a so-called “third-party action” against Huntley for its alleged negligence and/or violation of the Labor Law. From the carrier, petitioner received benefits totaling $193,225.91 as of December 10, 2007, including $142,000 in lost wage benefits and $51,225.91 in medical reimbursements. Further, by its decision of April 26, 2007, the Workers’ Compensation Board classified petitioner as permanently partially disabled and ordered the carrier to pay petitioner an ongoing maximum benefit of $400 per week, an amount based on petitioner’s average weekly wage before the accident. Meanwhile, on December 10, 2007, petitioner obtained a $600,000 tort settlement from Huntley. If that settlement was allocated to particular claims and elements of damages, that allocation has not been revealed to this court. As part of the settlement, petitioner’s counsel agreed to accept $126,330.62 as their reduced fee. That reduced counsel fee, in *241 conjunction with litigation disbursements of $3,002.63, gives rise to a cost-of-litigation percentage of 21.56%.[1]
The Parties’ Respective Positions
Respondent’s position with respect to past payments is that, after discounting its gross lien amount of $193,225.91 by the 21.56 cost-of-litigation percentage, respondent’s net lien is $151,566.40, an amount that respondent is entitled to recover (along with interest at 9% per year from Dec. 10, 2007) out of the settlement proceeds, since those proceeds exceed the amount of the net lien. (To put it another way, respondent acknowledges that its equitable share of the injured worker’s litigation costs is $41,659.51 [or $193,225.91 minus $151,566.40].) Respondent further contends that petitioner’s net recovery from the third-party action is $319,100.35 (or $600,000 minus litigation costs of $3,002.63, counsel fees of $126,330.62, and respondent’s recoverable or net lien of $151,566.40).
With respect to workers’ compensation benefits paid prior to the settlement, petitioner’s position is that the lien should be limited by the court to $6,676.20, or to such other amount as the court may determine to be appropriate based upon such equitable considerations as the fact that the $600,000 tort settlement represented only 24% of the counsel-estimated $2.5 million “full value” of the injured worker’s case against the tortfeasor (with such compromise being attributable to close issues of liability and witness credibility); and the further fact that only 22% of the settlement proceeds included elements of damages for which the injured worker had been compensated by respondent.[2]
*242 With respect to ongoing payments for lost wages and any qualifying medical expenses that might be incurred postsettlement, respondent’s position is that the compensation rate of $400 per week should be reduced, based on the cost-of-litigation percentage of 21.56% to $86.24 per week, and that there should be a similar proration of petitioner’s qualifying medical expenses, for the duration of respondent’s “credit,” i.e., until the worker’s $319,100.35 net recovery from the third-party action is exhausted at the compensation rate. Further, respondent contends that petitioner should be ordered to remit to respondent the difference between any payments received at an incorrect equitable rate of 33.67% (i.e., payments of $134.68) and those payments that petitioner should have been receiving at the correct rate of 21.56% (i.e., payments of $86.24), with such aggregate difference to be paid with interest at 9% from December 10, 2007.
In his papers, petitioner likewise takes the position that respondent must continue to make reduced weekly compensation payments and qualifying medical reimbursements based on the cost-of-litigation percentage “until the [petitioner's net recovery from his third-party lawsuit is exhausted.” At oral argument, petitioner emphasized that limiting the carrier’s lien for past benefits pursuant to the Ahlborn factors would merely entitle the carrier to a larger and lengthier period of “credit” in the future, and that petitioner thus would not obtain a windfall.
The Law
“Section 29 of the Workers’ Compensation Law governs the rights and obligations of employees, their dependents, and compensation carriers with respect to actions arising out of injuries caused by third-party tort-feasors. The claimant has the first right to bring a third-party action, and, while undertaking such an action, may continue to receive compensation benefits .... In the event that a claimant recovers in a third-party action, the compensation carrier is granted a lien on the amount of the recovery proceeds equal to the amount of past compensation it has paid, with interest .... The lien, however, is subordinate to a *243 deduction for costs and attorney’s fees . . . .” (Kelly, 60 NY2d at 136.)
Actually, section 29 confers two rights upon the carrier with regard to the proceeds of a favorable judgment or settlement of the third-party action. The first is the right to enforce a lien against the recovery in the amount of benefits paid in the past, whereas the second is the right to a have “credit” against the payment of further benefits — in other words, to enjoy a “holiday” in the payment of such benefits up to the amount of such credit (see Kelly, 60 NY2d at 137-138; Matter of McHenry v State Ins. Fund, 236 AD2d 89, 91 [3d Dept 1997]; Matter of Miller v Arrow Carriers Corp., 130 AD2d 279, 281 [3d Dept 1987]). Both rights, however, are subject to the carrier’s obligation to contribute ratably to the attorneys’ fees and other costs incurred by the injured worker in obtaining the settlement or recovery (see Kelly, 60 NY2d at 137-138; Hammer v Turner Constr. Corp., 39 AD3d 705 [2d Dept 2007]). Thus, Kelly holds that, because the carrier gains from the third-party recovery by virtue of both its lien right and its credit right, the carrier must contribute its equitable share toward litigation costs based upon both the benefits paid (and recoverable as a lien) and whatever future payments it will not have to pay. In other words, in the equitable apportionment of litigation costs between the carrier and the injured worker, the carrier’s share is expressed as a percentage of the total benefit that the carrier derives from the recovery, with such total benefit defined as the past compensation paid by the carrier up to the point of the recovery and the future benefits that the carrier will not have to pay on account of that same recovery (see Kelly, 60 NY2d at 138-139). It must be noted, however, that Kelly was a case in which the injured worker had died (id. at 135), meaning that it is not entirely controlling in this instance.
Controlling here is the more recent decision of the Court of Appeals in Burns. That case holds that, where (as here) the injured worker is to obtain future workers’ compensation benefits based on a nonschedule permanent partial disability, the present value of those benefits is speculative and thus cannot be ascertained at the time the injured worker obtains a settlement in the third-party action (see Burns, 9 NY3d at 210, 215-217; see also Matter of McKee v Sithe Independence Power Partners, 281 AD2d 891 [4th Dept 2001]).[3] In that event, Burns holds, the injured worker is not entitled to an immediate or *244 present apportionment of attorneys’ fees and litigation costs based on such future benefits, i.e., based upon both the carrier’s recoupment of its lien and the carrier’s relief or holiday from future compensation payments (Burns, 9 NY3d at 210, 215-217). Instead, the carrier’s equitable share will be assessed as a percentage of past benefits paid only. However, even where the value of future or “continuous compensation” benefits cannot be ascertained at the time of the settlement, the carrier should and will be required to periodically pay its equitable share of attorneys’ fees and costs, as by multiplying each future payment as it accrues by the cost-of-litigation percentage and remitting only that reduced sum to the injured worker for as long as such future benefits are awarded and for as long as the carrier’s credit lasts — i.e., until the credit is used up (see Burns, 34 AD3d at 65-66, affd, 9 NY3d 207, 217 [2007]). In that manner, the carrier’s equitable share of the counsel fees and other litigations costs can be determined “based on an actual, nonspeculative benefit” (Burns, 9 NY3d at 217). As indicated, respondent would have this court set the lien based upon the foregoing principles of state law.
Ahlborn, the case relied upon by petitioner, concerns the valid scope of a Medicaid or social services lien against the tort recovery of a Medicaid beneficiary; that case does not arise under New York’s workers’ compensation scheme. Ahlborn thus holds, as a matter of federal and not state law, that the requirement that state Medicaid officials seek recovery from liable third parties authorizes an assignment to the public of — i.e., permits the enforcement of the public’s lien against — the injured party’s recovery of medical expenses only, and not other elements of damages, including lost wages, pain and suffering, etc., recovered by the injured party (see Ahlborn, 547 US at 283-285, 291-292). Even more fundamentally, Ahlborn suggests that the Medicaid lien is to be enforced against the recovered medical expenses only in the proportion that the gross amount of the settlement bears to the true or actual value of the case, i.e., the amount of damages that might reasonably have been expected to be recovered by the injured party absent any liability issues or practical impediments to recovery (see Ahlborn, 547 US at 274, affg 397 F3d 620, 622 [8th Cir 2005]). As indicated, petitioner seeks to import those equitable considerations from the sphere of the Medicaid lien cases into this workers’ compensation lien situation.
*245 The Determination
The court concludes that this matter must be resolved in accordance with the New York statutes and cases cited by respondent, and not in accordance with the federal rules articulated in Ahlborn and relied upon by petitioner. The court must say, however, that it is not unsympathetic to petitioner, and that the rules laid out in Ahlborn have much to commend them in terms of common sense and fairness. Nonetheless, absent a declaration of its unconstitutionality, the United States Supreme Court has nothing to say about the proper interpretation of New York law, and it bears repeating that Ahlborn has nothing to do with New York’s workers’ compensation scheme in any event.
Workers’ Compensation Law § 29 (1) unequivocally provides that, where an injured worker brings a third-party action, the compensation carrier is entitled to enforce its lien, with interest, against
“the proceeds of any recovery from such [third party], whether by judgment, settlement or otherwise, after the deduction of the reasonable and necessary expenditures, including attorney’s fees, incurred in effecting such recovery, to the extent of the total amount of compensation awarded under or provided or estimated by this chapter for such case and the expenses for medical treatment paid or to be paid by it and to such extent such recovery shall be deemed for the benefit of such . . . carrier.” (Emphasis supplied.)
In other words, up to the amount of any past compensation paid, the lien is enforceable against the entire amount of the recovery or settlement in the third-party action (albeit after subtraction of attorneys’ fees and other litigation costs) (see Matter of Granger v Urda, 44 NY2d 91, 96 [1978] [the “carrier shall have a lien on the proceeds of any recovery by the claimant to the extent of compensation and medical expenses awarded”], 99 [the “section 29 lien in favor of a compensation carrier . . . attaches to the ‘proceeds of any recovery’ in favor of a compensation claimant against a third party”]; see also McHenry, 236 AD2d at 91). Consequently, the funds to which the lien attaches properly include any sums earmarked for pain and suffering or other elements of damages not covered by workers’ compensation (see Scannell v Karlin, 252 AD2d 552, 553 [2d Dept 1998], Iv denied 93 NY2d 805 [1999]; Matter of Parmelee v International Paper Co., 157 AD2d 878 [3d Dept 1990]; Matter of Simmons v St. Lawrence County CDP, 147 AD2d 323, 325 [3d Dept 1989]; *246 cf. Matter of Johnson v Buffalo & Erie County Private Indus. Council, 84 NY2d 13, 17-20 [1994]). Therefore, there is no occasion under the New York scheme for inquiring into whether and to what extent the case may have been settled by the injured worker for less than its true value or his actual total damages. Equally significant, because the compensation carrier is entitled to a lien against the entire amount of the injured worker’s recovery or settlement, there is no occasion under the New York scheme for inquiring into what portion of the settlement proceeds covers lost wages and medical expenses for which the injured worker has already been compensated, as opposed to pain and suffering or other items of damage not covered by workers’ compensation.
The court is mindful of petitioner’s assertion at oral argument that any judicial reduction of the carrier’s lien for past benefits paid will necessarily be compensated for by an increase in the carrier’s credit against future benefits. Recognizing that arithmetic truth, however, does not establish petitioner’s legal entitlement to the lien reductions he seeks. To the court’s understanding of New York law, petitioner has no such entitlement to the reduction of the carrier’s lien, which (again) is to be enforced against “the proceeds of any recovery by the claimant to the extent of compensation and medical expenses awarded” in the past (Granger, 44 NY2d at 96). Besides, petitioner’s assertion that any lien reduction will be matched by a corresponding increase in the carrier’s future credit is somewhat misleading. The practical concern for the carrier, of course, is not the abstract amount of its future credit, but the extent to which that future credit ultimately will be realized. Although petitioner insists that the carrier will eventually recover the same amount of money either way, the reality of the situation is that the carrier’s prospect of fully realizing any such artificially increased future credit depends on something the cases expressly label as unascertainable at present, i.e., the length of time that the carrier will be making cost-of-litigation-percentage-reduced future payments of lost wages and medical reimbursements to the injured worker (see Burns, 9 NY3d at 210, 215-217). Of course, reducing the carrier’s lien has the effect of increasing the injured worker’s net recovery, which has the effect of drastically increasing the time that the carrier must make such cost-of-litigation-percentage-reduced future payments in order to fully realize its credit. By the same token, lengthening the future credit-recovery period increases the likelihood that the injured worker will heal, return to work, attain retirement age, die, *247 and/or do any of the other things that might result in the curtailment or cessation of future benefits, thereby preventing the carrier from fully realizing its credit.
With respect to the rule that the lien is enforceable against the whole of the injured worker’s recovery or settlement in the third-party action (albeit after subtraction of attorneys’ fees and other litigation costs), the sole exception appears to be for settlement proceeds earmarked for the injured worker’s spouse’s loss of consortium (see Miszko v Gress, 4 AD3d 575, 578-579 [3d Dept 2004], lv denied 3 NY3d 606 [2004]; Matter of Raponi v Orange & Rockland Utils., 221 AD2d 786, 787 [3d Dept 1995]; see also Matter of Arena v Crown Asphalt Co., 292 AD2d 743, 747-748 [3d Dept 2002]; Feller v Sano-Rubin Constr. Co., 62 AD2d 1071, 1072 [3d Dept 1978]; but see Scanned, 252 AD2d at 553). That, of course, is in recognition of the fact that a spouse’s cause of action for loss of consortium is separate and distinct from the claims of the injured worker, that the noninjured spouse was and is not herself a recipient of workers’ compensation benefits, and that the carrier has no lien for and thus cannot recoup that which it has not paid (see Miszko v Gress, 191 Mise 2d 229, 232-233 [Sup Ct, Ulster County 2002], mod 4 AD3d 575 [2004], Iv denied 3 NY3d 606 [2004]). Here, although the record is silent concerning whether the settlement proceeds in this matter included any amounts intended to compensate petitioner’s wife for her loss of consortium, this court deems it fair and in keeping with the realities of the underlying litigation to attribute a minor part of the settlement — as opposed to none of it — to the compromise and release of the derivative claim. Considering the extent of petitioner’s injuries and his continuing disability, the sum of $60,000, equal to 10% of the gross settlement proceeds, strikes the court as an appropriate amount to ascribe to the derivative claim (see Miszko, 4 AD3d at 578-579).
The court thus employs the following figures in its calculations: The gross settlement proceeds for petitioner (as opposed to his wife) are $540,000. The cost of litigation percentage is 21.56%. Multiplying the carrier’s gross lien of $193,225.91 by that cost-of-litigation percentage gives rise to a net lien of $151,566.40. Petitioner’s net recovery from the third-party action — and hence the carrier’s future credit — is $259,100.35 (or $540,000 minus the litigation costs of $3,002.63, the counsel fees of $126,330.62, and respondent’s recoverable or net lien of $151,566.40).
*248 The court recognizes that enforcing the lien of the carrier in full against the injured, worker’s settlement, despite the fact that the value of the injured worker’s case may have been compromised and that the settlement probably included pain and suffering or other elements not covered by workers’ compensation, may seem inequitable. Nonetheless, the court is constrained to recognize that the workers’ compensation scheme, including its lien provision, amounts to a legislative quid pro quo (see Granger, 44 NY2d at 97-98). One part of that legislative trade off involves the recognition of injured workers as a favored (and, indeed, socially insured) class insofar as they are entitled to recover compensation for lost wages and medical expenses without suing and proving the fault of their employer or anyone else and without consideration of their own fault in bringing about the injury. The other part of the trade off, of course, is that, among other cost-containment measures, the workers’ compensation carrier is granted a lien against the full amount of any recovery or settlement in any third-party action, without reduction of that lien based on the kinds of equitable considerations cited by petitioner. The Legislature has deemed that trade off to be appropriate in order to balance the goal of protecting injured workers against the necessity of protecting the legitimate business and economic interests of employers and their workers’ compensation insurers (see Granger, 44 NY2d at 97-98). It is for the Legislature to determine whether that trade off should be altered for the further protection of injured workers at the expense of employers and insurers.
Accordingly, the petition is denied, and the cross motion of respondent is granted. Petitioner is ordered to pay respondent, out of the settlement proceeds, the sum of $151,566.40 as its statutory net lien, with interest at the annual rate of 9% from December 10, 2007. In the case of weekly payments and qualifying medical reimbursements made after December 10, 2007, respondent is ordered to make payments at the rate of 21.56% of what such payments otherwise would be, until respondent’s $259,100.35 credit is exhausted. Moreover, petitioner is ordered to reimburse respondent for the difference between any post-settlement payment(s) received at the incorrect rate of 33.67% and any payment(s) that should have been received at the rate of 21.56% with interest from the date(s) of such overpayment(s) at the annual rate of 9%.

. In his papers, petitioner relied on different counsel fee figures to arrive at a different cost-of-litigation percentage of 33.67% but petitioner acknowledged at oral argument that respondent’s figures and the resultant cost-of-litigation percentage of 21.56% are correct.

. Petitioner actually posits that petitioner’s future lost wages and benefits at the time of settlement were $552,817, or about 22% of the $2.5 million “full value” of the case. From that assertion, the court infers that petitioner is arguing that the remaining 78% of the full value of the case consisted of noneconomic damages, such as past and future pain and suffering, not covered by workers’ compensation, although the court is left to wonder how or why the counsel-hypothesized “full value” of the case might have excluded such obviously incurred (and compensation-covered) elements of economic damages as past and future medical expenses and past lost wages. Nevertheless (and here taking into account the correct figures), petitioner’s position seems to *242 be or suggest that the net lien of $151,566.40 should be limited by the 24% factor (thus reduced to $36,375.94), which resultant amount should be further limited by the 22% factor (thus further reduced to $8,002.71).

. Why that is so is explained at length in the lower court decision in Burns v Varriale (34 AD3d 59, 62-64 [3d Dept 2006], affd 9 NY3d 207 [2007]).