=================================================================
This opinion is uncorrected and subject to revision before
publication in the New York Reports.
-----------------------------------------------------------------
No. 125
In the Matter of Joseph A.
Terranova, Jr.,
            Appellant,
        v.
Lehr Construction Co. et al.,
            Respondents.
Workers' Compensation Board,
            Respondent.

            Robert E. Grey, for appellant.
            Patrick Woods, for respondent New York State Workers'
Compensation Board.
            J. Evan Perigoe, for respondent New Hampshire Insurance
Company.
            New York State Trial Lawyers Association; Injured
Workers' Bar Association, amici curiae.

WILSON, J.:

            When an injured worker obtains a recovery from a third-
party tortfeasor, both the worker and the employer's insurance
carrier may benefit.  Section 29 of the Workers Compensation Law
was enacted to ensure that insurance carriers pay their equitable
share of litigation expenses incurred by injured workers who

- 1 -

obtain such recoveries.  Here, the wooden application of our precedents to circumstances not contemplated therein has created a rule incompatible with that legislation.  Equitable apportionment should not turn solely on the label given to a claimant's award, whether that label is "schedule loss of use" or otherwise, but must take into account the certainty of the award at the time a third-party matter is resolved.

Joseph Terranova, a foreman employed by the Lehr Construction Company, injured his right knee on a raised floor tile at a job site.  He sought both workers' compensation benefits from Lehr's carrier, the New Hampshire Insurance Company (NHIC), and damages from the third-party contractor responsible for the defective tile.  At the time of Mr. Terranova's settlement with the third party -- to which NHIC consented in a letter -- he had received $21,495.99 in workers' compensation payments and was litigating the extent of his schedule loss of use before a workers' compensation law judge.  Proceedings before that judge continued after the third-party settlement and ultimately resulted in a finding that Mr. Terranova suffered a ten percent schedule loss of use of the right leg that entitled him to 28.8 weeks of benefits, or an additional $9,960.  Despite Mr. Terranova's arguments to the contrary, the judge -- as well as the Board and the Appellate Division -- concluded that because his ultimate award was of a type we had indicated had an ascertainable present value, he was not entitled to the

post-settlement apportionment of the litigation expenses

contemplated for other types of awards in <u>Burns v Varriale</u> (9

NY3d 207 [2007]).

As we have previously explained,

"Section 29 of the Workers' Compensation Law
governs the rights and obligations of
employees, their dependents, and compensation
carriers with respect to actions arising out
of injuries caused by third-party
tort-feasors.  A claimant has the first right
to bring a third-party action, and, while
undertaking such an action, may continue to
receive compensation benefits (Workers
Compensation Law, § 29, subd 1).  In the
event that a claimant recovers in a
third-party action, the compensation carrier
is granted a lien on the amount of the
recovery proceeds equal to the amount of past
compensation it has paid, with interest
(<u>id.</u>).  The lien, however, is subordinate to
a deduction for costs and attorney's fees
(<u>id.</u>). The statute was amended in 1975 (<u>see</u> L
1975, ch 190) to also provide: 'Should the
employee or his dependents secure a recovery
from [a third party], whether by judgment,
settlement or otherwise, such employee or
dependents may apply on notice to such lienor
to the court in which the third party action
was instituted, or to a court of competent
jurisdiction if no action was instituted, for
an order apportioning the reasonable and
necessary expenditures, including attorney's
fees, incurred in effecting such recovery.
Such expenditures shall be equitably
apportioned by the court between the employee
or his dependents and the lienor' (Workers'
Compensation Law, § 29, subd 1) . . .

The impetus for amending the law to provide
for allocation of litigation costs between
the employee and the carrier . . . was the
desire to stem the inequity to the claimant,
arising when a carrier benefits from an
employee's recovery while assuming none of
the costs incurred in obtaining the recovery,
and to ensure that the claimant receives a

full measure of the recovery proceeds in
excess of the amount of statutory benefits
otherwise due the claimant.  It was
determined that these interests would be most
effectively served by equitably apportioning
litigation costs.  This concept was purposely
adopted to avoid 'rigid statutory formulas'
and to implement a 'practical and flexible'
approach towards ensuring that a compensation
carrier assumes its fair share of the costs
of litigation (see Memorandum of NY Law Rev
Comm, op cit, p 1553; see, also, Becker v
Huss Co., 43 NY2d 527, 543, supra).  It is
evident that the determination of what
constitutes equitable apportionment of costs
has been left to the courts"

(Matter of Kelly v State Ins. Fund, 60 NY2d 131, 135-138 [1983]).

Twice previously we have been called upon to fashion a method for the equitable apportionment of legal expenses between claimants and carriers.  In Matter of Kelly, we held that the legislative purpose underlying the 1975 amendments was best served by "an allocation formula that takes into consideration the full benefit a carrier receives from an employee's recovery in a third-party action" (id. at 138).  That "full benefit" includes not only the past benefits paid (which the carrier may recoup via its lien) but also the present value of estimated future benefits (which the carrier will no longer have to pay out) (id. at 135).  In Kelly, the petitioner received death benefits after her husband's untimely demise in a construction accident.  Because death benefits are awarded at a fixed weekly rate until a spouse dies or remarries, the future value of those benefits could be ascertained with the aid of actuarial tables, reduced to its present value, subjected to a percent cost of

litigation multiplier, and used to, among other things, reduce a carrier's lien or calculate its holiday period.  In short, in Kelly as in the host of cases that followed its approach, when "the value of future compensation payments that a carrier has been relieved of paying due to a third-party recovery is not so speculative that it would be improper to estimate and to assess litigation costs against this benefit to the carrier," those costs should be apportioned at the time of any third-party settlement (id. at 139).

In Burns v Varriale, we confronted the case of a claimant entitled to speculative benefits for a nonschedule permanent partial disability (9 NY3d 207 [2007]).  Because the value of the benefits associated with such a disability typically fluctuates with, inter alia, the claimant's income, we held that "it cannot be quantified or reliably predicted" and that it would thus "not be appropriate for a court to apportion attorney's fees based on a such a benefit" at the time of the third-party settlement (id. at 215).  That unpredictability must not, however, result in a permanent windfall for the carrier. Instead, "the carrier should be required to periodically pay its equitable share of attorney's fees and costs" based on "actual, nonspeculative" benefits as those once-speculative benefits accrue (id. at 217).  We expected that pay-as-you-go process would apply in cases where "a claimant does not receive benefits for death, total disability[,] or schedule loss of use" (id. at

215).

Neither <u>Kelly</u> nor <u>Burns</u> contemplated the sequence involved here, in which a third-party settlement was consummated <u>before</u> an award was determined. Here, although the Board ultimately recognized the inequity of its initial determination, it first misinterpreted <u>Kelly</u> and <u>Burns</u> as requiring that litigation costs apportioned against all schedule loss of use awards be either assigned at the time of the third-party settlement or not at all. The Appellate Division, believing the result was dictated by <u>Burns</u> and <u>Kelly</u>, affirmed.

In <u>Burns</u>, we noted that "if a claimant does not receive benefits for death, total disability or schedule loss of use, the carrier's future benefit cannot be quantified by actuarial or other reliable means" (9 NY3d at 215). The Board and Appellate Division mistakenly concluded that the inverse of that statement is true, but it is not. If a claimant does receive benefits for death, total disability or schedule loss of use, the carrier's future benefit sometimes can -- but sometimes cannot -- be quantified by actuarial or other reliable means at the time a third-party settlement is reached.

Whether a particular type of award can be reliably quantified at some point in time does not end the inquiry; rather, a court must determine whether the award is quantified at the time a third-party suit is resolved, such that the litigation expenses associated with that suit can be equitably apportioned

in the allocation between claimant and carrier.  Once awarded by the Board, schedule loss of use benefits "are easily ascertainable because such awards are paid out over a specific number of weeks at a set rate (or in a lump sum)" and litigation costs can be fairly apportioned thereto (Burns, 9 NY3d at 216).  When that loss of use has been determined prior to the resolution of the third-party action, those costs can be awarded when the judgment or settlement is obtained.  When, as here, the present value of the loss of use or other benefits is not finalized at the time of the claimant's recovery in the third-party matter, the carrier must pay its fair share once the present value is determined.  We emphasize once again: Kelly, Burns, and Workers Compensation Law § 29 require carriers to bear their fair share of the litigation expenses.

NHIC also argues that Mr. Terranova contracted away any further rights to an equitable apportionment.  By letter agreement, the parties stated that the "lien reimbursement reflects a reduction of the carrier's lien pursuant to Kelly v[] State Insurance Funds [sic] and all parties reserve all their rights to Burns v[] Varriale."  The plain language of that agreement conditions Mr. Terranova's rights to equitable allocation of his expenses associated with his workers' compensation claim on our decision in this appeal: the proper interpretation of Burns.  Indeed, NHIC's argument to the contrary is belied by Mr. Terranova's rejection of NHIC's initial tender

of a proposed agreement by which Mr. Terranova would "forego any and all claims pursuant to Burns," as well as counsel's admission at argument that the carrier knew that Mr. Terranova's counsel meant to reserve those rights through the language actually adopted.  Were there any ambiguities, they would "be resolved against the carrier" (Matter of Brisson v County of Onondaga, 6 NY3d at 279 [internal quotation marks and citation omitted]; see also Stenson, 84 AD3d at 26; id. at 27-28).  As the Board and the Appellate Division implicitly concluded when deciding the case by applying our decisional law, the consent letter does nothing more than call for the application of section 29 as interpreted, at the Legislature's direction, by the courts.

Therefore, the order of the Appellate Division should be reversed, with costs, and case remitted to the Appellate Division with directions to remand the matter to the Workers' Compensation Board for further proceedings in accordance with this opinion.

*   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

Order reversed, with costs, and case remitted to the Appellate Division, Third Department, with directions to remand the matter to the Workers' Compensation Board for further proceedings in accordance with the opinion herein.  Opinion by Judge Wilson. Chief Judge DiFiore and Judges Rivera, Stein, Fahey and Garcia concur.  Judge Feinman took no part.

Decided December 19, 2017