■ In the Matter of the Claim of Laszlo Friedman, Appellant, v New York City Department of Transportation et al., Respondents. Workers' Compensation Board, Respondent.
[891 NYS2d 557]—

Garry, J.

Claimant sustained work-related back injuries in 1979 and 1983 while working for the self-insured employer. The Workers' Compensation Board classified him as permanently partially disabled and awarded him reduced earning benefits beginning in 1985, when he stopped working for the employer. The benefits were suspended in November 1987, when the employer's investigation revealed that claimant owned his own business, LAF Construction Corporation, and was also serving as a corporate officer for at least one other business. Claimant's case was closed in 1989 after he failed to comply with the direction of a Workers' Compensation Law Judge (hereinafter WCLJ) to produce personal and corporate tax returns. The case was reopened in 1990. The employer conducted an audit of claimant's tax returns, but the auditor determined that the audit could not be successfully completed without the records of the businesses in which claimant was serving or had served as a corporate officer. Claimant was ordered in 1993 and 1995 to provide the employer with contact information and authorizations for these corporations. He did not do so and, in 1998, the WCLJ directed the employer to subpoena the companies' records. The employer appealed and the Board affirmed and also directed claimant to subpoena the records. The subpoenas were fruitless and, in 2000, a WCLJ again directed claimant to produce corporate and personal tax returns to the employer. Claimant did not do so, and the WCLJ directed the parties to conduct another audit. The employer appealed. The Board rescinded the decision, finding that claimant had failed to provide sufficient evidence entitling him to reduced earnings, and closed the case pending his production of such evidence.

In 2003, after claimant requested that the case be reopened, the WCLJ directed the parties to arrange another audit. The employer appealed and the Board affirmed. The WCLJ directed

the employer to conduct the audit at the office of claimant's accountant. The employer again appealed, the Board affirmed, and the audit occurred in 2006. At a 2007 hearing, the employer's accountant testified that he was unable to conduct a meaningful audit because claimant provided returns only for the years 2000 through 2005 and schedules and supporting information were missing from the returns that were provided. Claimant testified that he had owned and operated LAF since 1985, that he was LAF's only employee, and that LAF's business consisted of the supervision and inspection of electrical contracting work. Claimant testified that between 1985 and 1988 he had operated a company called Q Electric in which his supervisory duties included the physical inspection of electrical work performed by the company's employees. Thereafter, he had acted as a corporate officer for a series of electrical firms where he served as a licensed master electrician, with duties consisting of the inspection and review of electrical work performed by the firms' employees. Claimant testified that the firms paid retainers to LAF for these services and that the amount of one such retainer was $2,500 per month. Claimant further testified that he owned and managed three rental properties and performed some repair work on the properties. After the hearing, the WCLJ determined that claimant was actively engaged in gainful activity as an electrician and home improvement contractor and had not demonstrated a diminution of earning capacity. Upon claimant's appeal, the Board affirmed. Claimant now appeals.

The amount of compensation to be paid in cases of permanent partial disability is two thirds "of the difference between the injured employee's average weekly wages and his or her wage-earning capacity thereafter in the same employment or otherwise" (Workers' Compensation Law § 15 [3] [w]; *see Burns v Varriale*, 34 AD3d 59, 64 [2006], *affd* 9 NY3d 207 [2007]). Pursuant to Workers' Compensation Law § 15 (5-a), an injured employee's wage earning capacity is determined by his or her actual earnings, and " '[t]he established rule is that profits from a business venture are not earnings for [this] purpose[ ]' " (*Matter of Fisher v Combined Life Ins.*, 272 AD2d 823, 823 [2000], quoting *Matter of Roberge v United Bd. & Carton Corp.*, 21 AD2d 713, 713 [1964]). Claimant contends that his income from his business ventures constituted profits rather than actual earnings because the work was allegedly supervisory in nature and "a self-employed claimant's work primarily in a supervisory capacity has been found to be profits from an investment" (*Matter of Fisher v Combined Life Ins.*, 272 AD2d at 823). The fundamental question is not, however, whether a claimant's

work is supervisory in nature but whether the claimant's income "[can] be considered earnings for services performed rather than return on investment" (*Matter of Cozzi v Christensen & Nielson*, 48 AD2d 720, 721 [1975]). Unlike a business owner who passively supervises employees who carry out the actual work of the business, claimant's testimony reveals that the inspection and review services that he performed for LAF constituted that company's actual work. The supervisory component of the work was inherent in the service that LAF provided and for which it was paid. "[W]hether an individual's income is based on profits or a salary for services performed is a factual determination for the Board" (*Matter of Calise v Hillside Carting, Inc.*, 38 AD3d 968, 969 [2007]). Here, the record supports the Board's determination that claimant's income from LAF was actively earned from his labor and constituted actual earnings rather than a passive return on investment (*see Matter of Fisher v Combined Life Ins.*, 272 AD2d at 823; *Matter of Joyce v European Auto Serv.*, 226 AD2d 952, 952-953 [1996]).

The Board further found that claimant was not credible with regard to his involvement with his business interests and that he failed to provide sufficient evidence to permit an evaluation of his alleged reduced earnings. Claimant challenges these findings, contending that the financial records he failed to provide were not withheld to conceal the sources of his income but, instead, that some records were inaccessible, others posed security concerns, and still others, in his view, were irrelevant. "The Board is vested with the discretion to weigh conflicting evidence and evaluate the credibility of witnesses, and its resolution of such matters must be accorded great deference" (*Matter of Donovan v BOCES Rockland County*, 63 AD3d 1310, 1312 [2009] [citation omitted]). If the Board's findings are supported by substantial evidence, they will be upheld (*see Matter of Guifarro v Zalman, Reiss & Assoc.*, 52 AD3d 1126, 1127 [2008]; *Matter of Calise v Hillside Carting, Inc.*, 38 AD3d at 969). The Board's credibility assessments are amply supported by the 22-year history of absent and incomplete disclosures, evasiveness, and lack of cooperation revealed in the record (*see generally Matter of Cronk v Lyndaker Excavating & Trucking*, 57 AD3d 1204, 1204 [2008]; *Matter of Guifarro v Zalman, Reiss & Assoc.*, 52 AD3d at 1127). The determination that claimant failed to provide sufficient evidence to permit a determination of his entitlement to reduced-earning benefits is similarly well supported (*see Matter of Virtuoso v Campbell Chevrolet*, 292 AD2d 731, 731-732 [2002], *lv denied* 98 NY2d 608 [2002]).

Spain, J.P., Rose, Malone Jr. and McCarthy, JJ., concur. Ordered that the decision is affirmed, without costs.