■ In the Matter of the Claim of MARIA CANALES, Appellant, v PINNACLE FOODS GROUP LLC et al., Respondents. WORKERS' COMPENSATION BOARD, Respondent. [986 NYS2d 641]—

Garry, J. Appeal from a decision of the Workers' Compensation Board, filed February 21, 2013, which ruled that claimant sustained a temporary marked partial disability rather than a temporary total disability for the period from July 6, 2011 to September 27, 2011.

In December 2010, claimant, who had been employed as a production laborer in a food processing plant for 14 years, suffered a work-related knee injury. Her treating physician, John Cannizzaro, determined in February 2011 that her level of temporary medical impairment was 100%; following surgery in April 2011, he found that this impairment level had not

changed. However, in June and July 2011, he determined that claimant's level of temporary impairment was 80%. In July 2011, the workers' compensation carrier's consultant physician, Charles Reina, conducted an independent medical examination (hereinafter IME) and opined that claimant had a temporary marked partial disability. As of the date of this IME, the carrier reduced claimant to a partial disability rate of 80%. Approximately 12 weeks later, in September 2011, an orthopedic surgeon determined that claimant's level of temporary impairment was 100%. Following a hearing, a Workers' Compensation Law Judge (hereinafter WCLJ) awarded compensation to claimant at an 80% temporary disability rate for the 12-week period between the IME and the orthopedic surgeon's determination, and at a total temporary disability rate thereafter. In February 2013, the Workers' Compensation Board affirmed the WCLJ's decision. Claimant appeals.

Claimant argues that the Board erred in relying solely upon her level of medical impairment and failing to consider vocational factors in determining the compensation rate for her temporary disability during the 12-week period following the IME. Claimant's hearing testimony, given through an interpreter, established that she was 52 years old, had completed only three years of primary education before immigrating to the United States, and had poor English language skills. Further, her employment experience was limited to hotel work and production and farm labor. Such vocational factors are considered by the Board in determining "loss of wage-earning capacity" for the purpose of setting the duration of a claimant's permanent partial disability benefits (Workers' Compensation Law § 15 [3] [w]; *see Employer: Buffalo Auto Recovery Serv.*, 2009 WL 5177881, *10, 2009 NY Wrk Comp LEXIS 15501, *27 [WCB No. 8070 3905, Nov. 12, 2009]). Claimant argues that, in combination with the nature of her injury, these factors effectively rendered her unemployable during the period in question, and the Board should have considered them in determining her "wage earning capacity" for the purpose of setting the compensation rate for her temporary disability (Workers' Compensation Law § 15 [5]).

Where, as here, the issue presented to this Court is primarily a matter of statutory construction and analysis, the Board's interpretation is not entitled to deference (*see Matter of Belmonte v Snashall*, 2 NY3d 560, 565-566 [2004]; *Matter of Krausa v Totales Debevoise Corp.*, 84 AD3d 1545, 1546 [2011]). Our objective in this analysis is to discern and apply the intent of the Legislature, which is determined in the first instance by giving

effect to the plain meaning of unambiguous statutory language (*see Matter of Albany Law School v New York State Off. of Mental Retardation & Dev. Disabilities*, 19 NY3d 106, 120 [2012]; *Matter of Wiley v City of Watertown Fire Dept.*, 39 AD3d 975, 976-977 [2007], *appeal dismissed* 9 NY3d 948 [2007]). In doing so, we find no error in the Board's statutory interpretation.

As pertinent here, the compensation rate for temporary partial disability resulting in reduced earning capacity is based upon the difference between the claimant's pre-injury average wages "and his [or her] wage earning capacity after the accident in the same or other employment" (Workers' Compensation Law § 15 [5]; *see Matter of Keefe v Aramatic Refreshment Servs. Inc.*, 110 AD3d 1429, 1430 [2013]). In almost identical language, the compensation rate for permanent partial disabilities that are not amenable to schedule awards is based upon the difference between the claimant's previous wages "and his or her wage-earning capacity thereafter in the same employment or otherwise" (Workers' Compensation Law § 15 [3] [w]; *see Matter of Friedman v New York City Dept. of Transp.*, 69 AD3d 1020, 1022 [2010]). For both temporary and permanent partial disabilities, the "wage earning capacity" of a claimant with no actual earnings is to be set by the Board at a reasonable level not greater than 75% of the claimant's previous full-time earnings, "having due regard to the nature of his [or her] injury and his [or her] physical impairment" (Workers' Compensation Law § 15 [5-a]; *see Matter of Matise v Munro Waterproofing Co.*, 293 NY 496, 499-500 [1944]). These provisions include no reference to vocational factors. However, when determining a claimant's *"loss of* wage-earning capacity" in order to set the duration of permanent partial disability benefits following classification (Workers' Compensation Law § 15 [3] [w] [emphasis added]), the Board considers not just the nature and degree of the injury, but also "work restrictions, [the] claimant's age, and any other relevant factors, with the [claimant's] 'wage earning capacity' as its inverse" (*Employer: Buffalo Auto Recovery Serv.*, 2009 WL 5177881, *10, 2009 NY Wrk Comp LEXIS 15501, *27; *see Employer: Longley Jones Mgt. Corp.*, 2012 WL 1893410, *3, 2012 NYWCLR [LRP] LEXIS 173, * 9 [WCB No. 6070 4882, May 21, 2012]; *see also Matter of Cameron v Crooked Lake House*, 106 AD3d 1416 [2013], *lv denied* 22 NY3d 852 [2013]).

We reject claimant's contention that this analysis should be applied to the determination of "wage earning capacity" as the term is used in Workers' Compensation Law § 15 (5-a). The phrase "loss of wage-earning capacity" was added to Workers' Compensation Law § 15 (3) (w), but not to any other provision

of the Workers' Compensation Law, as part of a comprehensive reform in 2007 (*see* L 2007, ch 6; *see generally Matter of Raynor v Landmark Chrysler*, 18 NY3d 48, 52-55 [2011]). The addition of the language in question was specifically intended to establish a new durational limit on non-schedule permanent partial disability benefits and to align them with those given for schedule loss of use permanent partial disabilities, which were already subject to a durational cap (*see Matter of Raynor v Landmark Chrysler*, 18 NY3d at 54-55). The 2007 reforms made no comparable alterations in the statutory provisions pertaining to temporary partial disabilities. Accordingly, the statutory plain language establishes that the term "loss of wage-earning capacity" is relevant only to the determination of the duration of permanent partial disability benefits at the time of classification, and that its addition to Workers' Compensation Law § 15 (3) (w) was not intended to alter the Board's reliance on a claimant's actual earnings or degree of physical impairment to determine his or her "wage earning capacity" as that term is used in Workers' Compensation Law § 15 (5-a). The Board adopted the interpretation of the phrase "loss of wage-earning capacity" at issue here to implement the underlying legislative intent of the 2007 reforms, and correctly limited this interpretation to the durational determination (*see Employer: Buffalo Auto Recovery Serv.*, 2009 WL 5177881, *10, 2009 NY Wrk Comp LEXIS 15501, *27). As the medical evidence here established that claimant had a temporary partial disability during the 12-week period in question, the Board's decision was supported by substantial evidence and will not be disturbed (*see Matter of Hallarman v Hallarman & Hallarman*, 124 AD2d 458, 460 [1986]).

Lahtinen, J.P., Stein and Rose, JJ., concur. Ordered that the decision is affirmed, without costs.